The **STATE** of Ohio, Appellee,

v.

**BURNS, Appellant.**

[Cite as *State v. Burns* (1996), 113 Ohio App.3d 598.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69676.

Decided Aug. 19, 1996.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Stephen L. Miles,* Assistant Prosecuting Attorney, for appellee.

*Richard Agopian,* for appellant.

O'DONNELL, Judge.

Sharon Burns appeals from a jury verdict finder her guilty of murder in connection with the stabbing death of seventeen-year-old Billy Taylor.

Around ten o'clock on the evening of June 11, 1995, a group of young males congregated at the Cliffview Apartments in Cleveland and began to argue with the appellant. One of the boys had thrown a chicken bone through an open window of appellant's apartment, and another threw a rock and broke a window. Appellant grabbed an eight-inch serrated kitchen knife and went outside. During this altercation, she stabbed Billy Taylor in the chest with the knife, creating a five-inch-deep penetrating wound, which pierced his lung. He died a short time later from his injuries at Huron Road Hospital.

That evening, police arrested appellant, found the murder weapon on her dining room table, and charged her with aggravated murder in the stabbing death of Billy Taylor. At the time of her arrest, appellant admitted to police that she had stabbed Taylor but maintained that she had done so accidentally.

On September 11, 1995, the court began the trial of this matter. During *voir dire* and without objection from counsel, the court excused a venireman for cause due to a previously scheduled business trip. Thereafter, the court permitted the state, over defense objection, to peremptorily challenge a black venireman, and excused for cause, over defense objection, a second venireman who also had a prearranged business trip.

At trial, the state called Fredrick Williams, a Cliffview resident, who testified that he came down from his apartment to investigate the breaking glass and noticed that appellant had a knife in her hand. He told her to put it away, but she ignored him. Williams stated that appellant followed Taylor across the lawn of the apartment, with the knife in her hand, and told Taylor that she would "F—— him up." Williams then glanced away from appellant and Taylor, and when he looked back, Taylor had been stabbed. Williams also testified that Taylor crawled toward him saying that appellant had cut him.

Debbie Dortch, who was outside at the time sweeping the apartment steps, also testified for the state and gave a similar account of the events of that evening. In addition, she testified that she saw appellant inflict the fatal wound on Taylor.

Sonya Edwards also testified as an eyewitness who observed the entire incident from her apartment. She stated that she saw appellant run up to Taylor, thrust the knife straight into his chest, take it out, and then return to her apartment.

In her defense, appellant maintained that she had accidentally stabbed Billy Taylor; her sister, Jatanna Burns, and her brother, Kwane Thornton, corroborat-

ed that testimony. In conformity with that evidence, the court charged the jury on both murder and negligent homicide. The jury, however, after hearing all the evidence, found appellant guilty of murder. On appeal three errors are assigned for our review.

The first assignment of error states:

"The trial court denied the defendant her right to a fair and impartial jury as guaranteed by the Sixth Amendment to the United States Constitution, by removing a juror for cause, when no cause existed."

██ Appellant contends that the trial court violated her constitutional right to a fair and impartial jury when it excused a juror for cause due to a business trip because the law does not permit removal for cause on that basis.

The state maintains that in the proper exercise of its discretion, the trial court determined that the potential juror's prearranged business trip rendered her unsuitable for jury service pursuant to Crim.R. 24 and, therefore, the court neither abused its discretion nor violated the appellant's constitutional rights.

The issue then presented for our review is whether trial court properly excused venireman Sagar for cause in this instance.

We begin by reviewing Crim.R. 24, which provides:

"(B) Challenge for cause. A person called as a juror may be challenged for the following causes:

" * * *

"(14) That he is otherwise unsuitable for any other cause to serve as a juror.

"The validity of each challenge listed in this subdivision shall be determined by the court."

██ Further, the Ohio Supreme Court has considered application of this rule and stated that a trial court in the exercise of its discretion may disqualify a juror for cause and this determination will not be reversed on appeal absent an abuse of discretion. See *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301; *Maddex v. Columber* (1926), 114 Ohio St. 178, 151 N.E. 56; and *State v. Bedford* (1988), 39 Ohio St.3d 122, 529 N.E.2d 913. "The term 'abuse of discretion' connotes more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 149.

A review of the record in this case reveals that the trial court, in the exercise of its discretion, excused two veniremen for cause due to prearranged business trips. In the first instance, the court, without any objection from defense counsel, excused potential juror Seman, who advised the court that he had a

planned business trip to St. Louis. In the second instance, the instant matter of which appellant complains, the court excused potential juror Sagar, who advised the court of a prearranged business trip, and who had already purchased her airline tickets, which she offered to show the court. When defense counsel objected, the following colloquy occurred at side bar:

"THE COURT: The State of Ohio has no objection to this juror being excused for cause. Mr. Agopian does have an objection to this juror being excused for cause.

"There was no objection when the other gentleman, Juror Number 1, was excused for cause because he had to be out of the state on an important business meeting.

"This Court will not discriminate and determine that one is going to be allowed to go to their meeting and another isn't.

"So I am, in fact, excusing this juror for cause.

"Mr. Agopian has indicated he would go along with excusing this juror for cause, only if I allow him to question the next juror, and then, if he likes the next juror, then he would allow this juror to be excused for cause.

"This court absolutely will not engage in a practice of that nature. This juror will be excused for cause.

"MR. AGOPIAN: * * * I consented to the release of Mr. Seman before having had the opportunity to go through this jury pool, and having had the opportunity to go through the jury pool, I realize there is a large concentration of people on this particular panel that I would find unacceptable in most circumstances, and the fact that the Judge granted the peremptory challenge to the original Juror Number 12, Sharon Leak, and had the Court not done that, and accepted the arguments, we wouldn't be in that position. Those are the reasons.

"THE COURT: Well, I find it incredibly unreasonable to allow one juror to go based on a business meeting, which has been previously scheduled, and not allow this one who has a meeting that has been scheduled for two months, and who has plane tickets, and I believe it would be an abuse of my discretion, and I am therefore, allowing this juror to go."

After reviewing the transcript, we conclude that the court did not display an unreasonable, arbitrary or unconscionable attitude in excusing this venireman for cause. Since we do not find an abuse of discretion, this assignment of error is overruled.

The second assignment of error states:

"The trial court erred in allowing the prosecution to use a peremptory challenge to exclude a juror on the basis of race, which denied the defendant

equal protection of the law guaranteed to her by the Fourteenth Amendment of the United States Constitution."

■ Appellant contends that the trial court erred in permitting the state to exercise a peremptory challenge of Sharon Leak, a black juror, because the challenge violated *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, since it was racially motivated.

The state urges that appellant has failed to establish that the prospective juror was dismissed because of race and that it articulated race-neutral reasons for its challenge.

The issue then for our resolution is whether the trial court erred in permitting the state to exercise its peremptory challenge to excuse Sharon Leak from the panel.

Crim.R. 24 provides:

"(C) Peremptory challenges. In addition to challenges provided in subdivision (B), if there is one defendant, each party peremptorily may challenge * * * four jurors in felony cases other than in capital cases. * * *"

In *Batson v. Kentucky, supra,* the United States Supreme Court stated:

"In *Swain v. Alabama,* this Court recognized that a 'State's purposeful or deliberate denial to Negroes on account of race of participation as jurors in the administration of justice violates the Equal Protection Clause.' 380 U.S., [202] at 203–204, 85 S.Ct., [824] at 826–827, 13 L.Ed.2d 759 [at 763–764]. This principle has been 'consistently and repeatedly' reaffirmed, id., at 204, 85 S.Ct. at 827, [13 L.Ed.2d at 763–764] in numerous decisions of this Court both preceding and following *Swain.* We reaffirm the principle today." *Batson,* 476 U.S. at 84, 106 S.Ct. at 1716, 90 L.Ed.2d at 79.

■ Further, in *State v. Hernandez* (1992), 63 Ohio St.3d 577, 582, 589 N.E.2d 1310, 1313, the court articulated factors which raise an inference of purposeful race discrimination in the selection of a jury:

"[T]he defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. *This combination of factors in the empaneling of the petit jury, as in*

*the selection of the venire, raises the necessary inference of purposeful discrimination.* See, also, *Batson v. Kentucky* [*supra* ]." (Citations omitted.)

Once these elements have been established, the prosecutor must articulate race-neutral reasons to excuse potential jurors. The trial court then must determine if the accused has proved purposeful discrimination based upon race. *Batson, supra,* 476 U.S. at 96–98, 106 S.Ct. at 1723, 90 L.Ed.2d at 87–89.

In this instance, despite the prosecutor's challenge, the judge found that the state did not challenge two black members of the panel and further found that the state articulated race-neutral reasons for its challenge based on Leak's employment and former residence. Thus, appellant has neither shown that the state exercised its challenges to systematically remove all members of her race, nor raised an inference that this juror was removed for other than a race-neutral reason. Accordingly, the trial court correctly ruled the state's peremptory challenge was not discriminatory. Hence, we find no merit to this assignment of error and it is therefore overruled.

The third assignment of error states:

"The conviction of the defendant, for murder, pursuant to R.C. 2903.02 was against the manifest weight of the evidence."

■ Appellant asserts that the jury verdict is against the manifest weight of the evidence because the prosecution failed to prove that appellant purposely caused Billy Taylor's death.

The state maintains that the evidence supports the murder conviction and therefore the verdict is not against the manifest weight of the evidence.

The issue then, presented by this assignment of error, is whether the jury verdict is against the manifest weight of the evidence.

In *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717, this court set forth the following test for the determination of whether a jury verdict is against the manifest weight of the evidence:

"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weights heavily against the conviction. See *Tibbs v. Florida* (1982), 457 U.S. 31, 38, 42, 102 S.Ct. 2211, 2216, 2218, 72 L.Ed.2d 652 [658–659, 661–662]." *Martin,* 20 Ohio App.3d at 175, 20 OBR at 219, 485 N.E.2d at 720–721.

An inquiry into whether a jury verdict is against the manifest weight of the evidence involves a determination of whether the jury properly considered the evidence prior to rendering its verdict.

In this case, the record reflects that the court instructed the jury on both murder and the lesser included offense of negligent homicide. After deliberation, the jury convicted appellant of murder.

In accordance with *Martin, supra,* we consider whether the jury lost its way in returning this verdict and created a manifest miscarriage of justice so as to justify a reversal.

Murder is defined as purposely causing the death of another. Negligent homicide is defined as negligently causing the death of another by means of a deadly weapon.

A central issue then presented to the jury concerned whether appellant purposely or negligently killed Taylor, because the evidence revealed that the knife wound inflicted by appellant had killed Taylor. At trial, four eyewitnesses testified that appellant threatened Billy, ran after him, and stabbed him in the chest. Appellant testified in her defense that Taylor ran into the knife, and her brother and sister corroborated her testimony. We have reviewed the credibility of all of the witnesses who testified, and in accordance with *Martin, supra,* after reviewing the record, weighing the evidence and considering all reasonable inferences therefrom, we cannot conclude that the jury lost its way and created a manifest miscarriage of justice. Accordingly, this assignment of error is not well taken.

In accordance with the foregoing analysis, the judgment of the trial court is affirmed.

*Judgment affirmed.*

HARPER, P.J., and DYKE, J., concur.