OPINION
This is a timely appeal from a decision of the Court of Common Pleas of Mahoning County, entered on September 13, 1995, finding Ali-Freed Johnson ("Appellant") guilty of murder with a firearm specification. The court thereafter sentenced him to an indefinite term of fifteen years to life with a three year consecutive term for the firearm specification. Appellant also appeals a subsequent order, entered on June 7, 2000, denying his motion for a new trial.
Appellant challenges the weight and sufficiency of the evidence presented against him at trial. Appellant also claims that the trial court erroneously denied his motion for a new trial where it found him guilty of murder without first considering whether he was more properly guilty of the lesser included offense of involuntary manslaughter. As detailed in the discussion that follows, the trial court did not commit reversible error and its judgment is affirmed.
Sometime around midnight on August 28, 1993, Charles Hudson, Jr. ("Hudson") was shot and killed in a parking lot outside 1072 Eastway Drive, in Youngstown. Police subsequently arrested Appellant in connection with that shooting and charged him with aggravated murder with a firearm specification.
At the ensuing bench trial, the State ("Appellee") alleged that Appellant had fired a loaded .38 caliber revolver at Hudson from the inside of a parked vehicle as Hudson leaned into the vehicle's front driver's side. Hudson was struck in the left shoulder, right thigh, left scrotum and suffered a fatal wound to the chest. (Bill of Particulars, April 13, 1995). Appellant maintained that he fired at Hudson in self-defense and never intended to kill him.
The evidence presented at trial demonstrated that on the night Hudson was killed, Appellant and his friend, Stephen Tucker ("Tucker") had been visiting Shawnell Morgan ("Morgan") at her fourth floor apartment located on 1072 Eastway Drive in the McGuffey Terrace Apartments. (Tr. pp. 218, 868). Morgan and Appellant had been romantically involved for several months. (Tr. pp. 203, 867). That night, however, Terrence Mackie ("Mackie"), the father of Morgan's two children, had phoned, invited himself over, and directed Morgan to send her visitors away. (Tr. pp. 121, 166, 209).
After Morgan explained the situation to Appellant and Tucker, the two men left, indicating that they would try to return later in the evening after Mackie was gone. (Tr. pp. 213, 214, 793, 881). Shortly after they left, Mackie arrived at the apartment accompanied by Hudson. (Tr. pp. 38, 215, 223). Mackie and Morgan began to argue. (Tr. pp. 227-228). Hudson settled down in the living room by a window overlooking the parking lot. (Tr. p. 229).
In the meantime, Appellant and Tucker had visited another friend's house, where they traded Appellant's beige colored Cougar for a gold Sunbird. (Tr. pp. 793-794, 838, 882). They purchased some beer and then returned to the McGuffey Terrace apartments, where they parked in the lot outside Morgan's apartment building. Intending to go back to Morgan's, the two sat in the lot waiting for Mackie to leave. (Tr. pp. 796, 799). Appellant and Tucker lounged in the car with the windows down, sipping beers and listening to music. (Tr. p. 798).
Inside Morgan's apartment, the argument between Mackie and Morgan continued. Hudson, who had remained by the living room window, noticed the Sunbird pull into the lot and come to a stop under a light pole. He decided to go outside and investigate. (Tr. pp. 17, 173). From inside the apartment, Morgan and Mackie watched as Hudson approached the driver's side of the Sunbird. (Tr. pp. 135, 175). The couple testified that Hudson appeared to be unarmed. (Tr. pp. 16, 168, 174). When Hudson reached the car, Tucker ducked down and Appellant shot him four times. (Tr. pp. 239, 893). Hudson fell to the ground and Tucker and Appellant sped from the scene. (Tr. pp. 893, 896). Appellant threw the gun out of the vehicle somewhere on McGuffey street. (Tr. p. 896).
After hearing the shots fired, Mackie ran out to the parking lot to assist Hudson. He found Hudson laying face down on the pavement. According to Mackie, Hudson was unarmed. (Tr. pp. 21, 48).
In addition to the testimony of Morgan and Mackie, the prosecution called John Staufender, the paramedic who transported Hudson to the hospital. Staufender confirmed that no gun was recovered from the scene. (Tr. p. 319). Dr. Edmund Massullo, the coroner, testified regarding his examination of Hudson's body. Dr. Massullo noted gunshot wounds in Hudson's testicles, thigh, buttock, left forearm and left shoulder. (Tr. pp. 336-338). One of the bullets had entered Hudson's left shoulder and traveled downward through the arm into his chest lacerating the aorta and lung and lodging in the right side of his chest. (Tr. pp. 339-340). According to Dr. Massullo, this gunshot wound to Hudson's aorta caused hemorrhagic shock and precipitated his death. (Tr. p. 348). No gunshot residue tests were performed on Hudson. (Tr. p. 353).
Police eventually located Appellant and, on November 17, 1993, arrested him in Brimfield, Ohio. (Tr. p. 461). During the interrogation that followed, Appellant confessed to shooting Hudson with a .38 caliber revolver. (Tr. pp. 423, 438). Initially, Appellant told police that Hudson had merely shown him a weapon stuck in the waistband of his jeans. (Tr. p. 465). In subsequent statements and at trial, however, Appellant maintained that he only returned fire after Hudson had pulled the gun and fired at him. (Tr. pp. 714-715, 891, 893).
At trial, Appellant testified that he shot at Hudson, but insisted that he did so in self-defense. Both Appellant and Tucker testified that Hudson had pulled out a handgun and threatened to shoot them. (Tr. pp. 806-815, 892-893). Appellant testified that he thought Hudson had fired at his car twice. Appellant maintained that he only intended to stop Hudson, not kill him, and that he had purposely directed the weapon low so that the bullets would strike Hudson below the waist. (Tr. p. 893).
At the close of the evidence the trial court found Appellant guilty of murder with a firearm specification. The trial court thereafter sentenced him to a term of fifteen years to life on the murder charge with a three year consecutive term for the firearm specification charge. (Supplemental Tr. 2 — Verdict and Sentencing).
On September 20, 1995, Appellant filed a motion for a new trial pursuant to Crim.R. 33. In that motion, Appellant claimed that, "by reason of inadvertence or mistake on the part of his counsel, that the court was not requested to consider the lesser included offense of Voluntary Manslaughter." (Motion for New Trial p. 1).
Inexplicably, Appellant's motion remained pending in the trial court for nearly three years with no action taken. Then, on July 13, 1998, Appellant filed a document entitled Supplemental Memorandum in Support of Defendant's Motion for New Trial. In that pleading, Appellant maintained that, "[w]hile the Defendant may not have met his burden of proving self-defense by a preponderance of the evidence, the trial record establishes that the Defendant did not act purposely when he caused the death of Charles Hudson." (Supplemental Memorandum in Support of Defendant's Motion for New Trial p. 2). Therefore, Appellant contended that he was guilty only of voluntary or involuntary manslaughter.
Again, the matter sat on the trial court's docket with no action for an extended period of time. Finally, on June 7, 2000, fully five years from the date of Appellant's conviction and without any explanation whatsoever for the delay, the trial court entered an order overruling Appellant's motion for a new trial stating that the, "[i]ssue of lesser included offenses was not raised at trial by counsel or the Court, therefore no lesser offenses were considered." (Judgment Entry, June 7, 2000). Appellant now appeals that decision and his underlying conviction. Appellant raises two assignments of error on appeal which are more coherently addressed in reverse order. Accordingly, in Appellant's second assignment of error he alleges that,
 "APPELLANT'S CONVICTION SHOULD BE REVERSED BECAUSE IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE EVIDENCE SUPPORTING THE CONVICTION WAS INSUFFICIENT AS A MATTER OF LAW."
Appellant contends that his conviction is both contrary to the manifest weight of the evidence and insufficient as a matter of law. In State v.Thompkins (1997), 78 Ohio St.3d 380, the Ohio Supreme Court distinguished between the legal sufficiency of evidence and its attendant weight. Sufficiency, the Court concluded, "is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally insufficient to support the jury verdict as a matter of law." Id. at 386, quoting Black's Law Dictionary (6TH Ed. 1990) 1433, and Crim.R. 29(A). According to the Court, sufficiency "* * * is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." Id., citing Statev. Robinson (1955), 162 Ohio St. 486.
Determining the sufficiency of the evidence at trial requires the reviewing court to examine all probative evidence and draw all reasonable inferences from them in a light most favorable to the prosecution. In that light, the court then ascertains whether any rational trial of fact could have found all the elements of the crime charged proven beyond a reasonable doubt. State v. Reed (1988), 128 Ohio App.3d 520, 522.
An analysis of the manifest weight of the evidence, on the other hand, concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict if, on weighing the evidence in their minds, they find the greater amount of credible evidence sustains the issue which is to be established before them. State v.Thompkins (1997), 78 Ohio St.3d 380 at 387, quoting Black's Law Dictionary, 1594. In the wake of Thompkins, a court of review may find that a trial court's decision is sustained by sufficient evidence but, under rare circumstances, may conclude nonetheless that the decision was against the manifest weight of the evidence and remand for a new trial.Id. at 387.
Analysis under the manifest weight of the evidence standard requires a court of appeals to review the entire record, reweigh the evidence and all reasonable inferences, consider the credibility of witnesses and resolve conflicts in the evidence. Such determinations place the court of appeals in the uncomfortable role of "thirteen juror" especially when it reexamines a trial court's credibility determinations.
In undertaking such a review, this Court remains mindful that the determination regarding witness credibility rests primarily with the trier of fact. State v. Hill (1996), 75 Ohio St.3d 195, 205, citing Statev. DeHass (1967), 10 Ohio St.2d 230, 231. The trier of fact is in the best position to view the witnesses and observe their demeanor, gestures and voice inflections. Those observations are critical to a resolution of each witnesses' credibility. State v. Scott (March 9, 1998), Mahoning App. No. 95 C.A. 140 (unreported), citing State v. Antill (1964),176 Ohio St. 61; and Baker, supra at 538. That opportunity is simply not available to this Court who must base its decisions on what it can glean from an often inscrutable record.
Reviewing the evidence in the record and all reasonable inferences from that evidence in a light most favorable to the prosecution, this Court concludes that the trial court properly found that Appellee proved all the elements of murder beyond a reasonable doubt. Therefore, Appellant's challenge of both the weight and sufficiency of the evidence against him must fail.
The trial court found that Appellant intended to kill Hudson when he shot him in the parking lot outside Morgan's apartment building. Appellant maintains that the evidence proves that he was acting in self-defense when he shot Hudson and that he only intended to stop him, not kill him.
A defendant's specific intent to kill can be established by circumstantial evidence. State v. Jenks (1991), 61 Ohio St.3d 259, 272. Intent may be deduced from the surrounding circumstances, including the means or weapon used, its tendency to destroy life if designed for that purpose, and the manner in which the wounds were inflicted. State v.Hayden (Sept. 16, 1997), Franklin App. No. 95APA05-559, unreported.
Appellant fired four bullets into Hudson's body at close range. One of those bullets eventually entered his chest, tore into his aorta and caused him to bleed to death internally. (Tr. pp. 339-340). Appellant maintains that since most of the bullets were aimed at Hudson's groin, Appellee lacked evidence that he intended to bring about Hudson's death. Ignoring the fact that Hudson could have suffered a fatal wound below the belt, the one that ultimately killed him was fired into his shoulder. The court found that Appellant's actions constituted murder. Given the facts, that conclusion is hardly unreasonable.
In State v. Smith (1993), 89 Ohio App.3d 497, the court upheld the defendant's murder conviction where the evidence showed that the defendant fired a 9-millimeter handgun at least one time into a crowd of people congregated less than twenty feet away, killing one of them. At trial, the defendant claimed that although he fired the weapon, he did so without the specific intent to kill anyone. Id. at 501. The court concluded that, "given the close range and caliber of the firearm, a trier of fact could construe the intention to shoot as proof of an intention to kill." Id.
The Supreme Court reached a similar conclusion in People v. Chinn
(1999), 85 Ohio St.3d 548. There, the Court upheld the defendant's capital murder conviction even when the fatal wound resulted from a gunshot in the victim's arm. In that case, the bullet passed through the victim's left arm, entered his chest, perforated the main pulmonary artery and came to rest near the base of his heart. Id. at 567. Resolving that, "the shot was fired in a manner that was likely to and did cause the victim's death," the Court indicated that intent to kill the victim could be inferred where the defendant pressed the muzzle of the revolver directly against victim's sweatshirt. The Court further held that, "[i]t is well-established that `where an inherently dangerous instrumentality was employed, a homicide occurring during the commission of a felony is a natural and probable consequence presumed to have been intended. Such evidence is sufficient to allow a jury to find a purposeful intent to kill.'" Id., citing State v. Esparza (1988), 39 Ohio St.3d 8, 14, quoting, State v. Jester (1987), 32 Ohio St.3d 147, 152. Thus, the trial court had before it sufficient evidence on which to convict.
In the instant case, the trial court also disregarded Appellant's self-defense claim. Self-defense is an affirmative defense that must be raised and proven by a preponderance of the evidence. State v. Kurincic
(November 30, 1995), Cuyahoga App. No. 68246, unreported; and R.C. §2901.05(C). To establish self-defense, the defendant must show: 1) that he was not at fault in creating the situation that gave rise to the altercation; 2) that he had a bona fide belief that he was in imminent danger of suffering death or great bodily harm and that the only means of escape was the use of such force; and 3) that he did not violate any duty to retreat or avoid the danger. State v. Melchior (1978), 56 Ohio St.2d 15,20-21.
Turning to a manifest weight review, and viewing the evidence as a whole, the trial court did not err when it concluded that Appellant failed to show that he shot Hudson in self-defense. Appellant relies almost exclusively on his testimony and that given by his best friend, Steven Tucker. Appellant maintained that Hudson was armed when he approached the car where Appellant and Tucker sat.
Both Tucker and Appellant testified that Hudson showed them a weapon, pointed it in their direction, and threatened to "cap" them. At trial, Appellant stated that Hudson had fired at him first. The objective evidence, however, contradicted Appellant's version and plainly weighed in favor of the prosecution.
No shell casings were recovered from the scene or the vehicle and no bullet holes were observed on the vehicle. No gun was found on Hudson, nor was one recovered from the scene of the shooting. Moreover, the fact that Appellant's version of the occurrence had evolved over time is difficult to overlook and obviously undermined his credibility.
It is undisputed that Appellant pointed a fully-loaded revolver at Hudson and shot at least four bullets into his body at close range. Afterward, Appellant fled, not only the scene of the shooting, but the Youngstown area altogether. It took the police more than two months to locate and arrest him.
Given the obvious weaknesses in Appellant's account of the incident, it is not surprising that the trial court chose to disbelieve that account. It is entirely appropriate for the finder of fact to believe the testimony of some witnesses while disregarding that offered by others.State v. Burns (1996) 113 Ohio App.3d 598. In Burns, the central issue concerned whether the defendant purposely or negligently killed the victim. At trial, the state's eyewitnesses testified that the defendant threatened the victim, chased him, and stabbed him in the chest. The defendant and her witnesses, on the other hand, testified that the victim had run into a knife the defendant had been holding. The trial court adopted the state's version of what occurred. In affirming, the court of appeals concluded that the case turned on a credibility determination and after reviewing the record, weighing the evidence and considering all reasonable inferences therefrom, it could not conclude that the jury lost its way and created a manifest miscarriage of justice. Id., at 607.
Under the same analysis, the trial court's decision, reached after hearing the evidence and observing the witnesses who testified, was entirely proper. Appellant's second assignment of error is overruled.
Appellant's first assignment of error is set forth as follows:
 "THE TRIAL COURT ERRED IN CONVICTING APPELLANT OF MURDER WHEN IT FAILED TO CONSIDER THE LESSER INCLUDED OFFENSE OF INVOLUNTARY MANSLAUGHTER."
Appellant maintains that the trial court erred when finding him guilty of murder without first considering whether he was more properly guilty of a lesser included offense. Appellant essentially argues that he is entitled to a new trial because the trial court failed to make explicit findings with respect to whether he was more properly guilty of a lesser included offense before finding him guilty of the greater offense of murder. There is no such requirement.
A motion for a new trial pursuant to Crim.R. 33 is addressed to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v. Schiebel (1990), 55 Ohio St.3d 71,76.
After considering the evidence presented, the trial court concluded that Appellant was guilty of murder. The court so decided, notwithstanding Appellant's claim that he killed the victim in self-defense. Two conclusions can be drawn from this decision. First, the trial court necessarily found that Appellee had proven each and every element of the charged offense beyond a reasonable doubt. Second, the trial court concluded that the evidence was insufficient to demonstrate that Appellant killed Hudson in self-defense.
Appellant argues that the evidence below supported a finding that he was guilty, not of murder, but of involuntary manslaughter, a lesser included offense. An offense may be a lesser included offense of another if: (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense. State v. Deem (1988), 40 Ohio St.3d 205,209; R.C. 2945.74 and Crim.R. 31(C).
One commits the offense of murder where he purposely or intentionally causes the death of another. R.C. § 2903.02 R.C. § 2901.22(A). A conviction for the offense of involuntary manslaughter, in contrast, merely requires a showing that the actor brought about the death of another during the commission of a felony. R.C. § 2903.04. Since proof of this crime does not require a showing that Appellant intended the death or acted purposely in bringing about that result, involuntary manslaughter is a lesser included offense of murder. State v. Perry
(August 29, 1997), Trumbull App. No. 94-T-5165, unreported.
Appellant claims that when he shot Hudson he acted in self-defense and, in any event, he did not shoot Hudson with the purpose of killing him. Therefore, he should not have been found guilty of murder. According to Appellant, when his trial attorney inadvertently failed to ask the trial court to consider lesser included offenses, the trial court was placed in the, "untenable position of either acquitting him by virtue of self-defense or finding Appellant guilty of murder." (Appellant's Brf. p. 14).
Such an argument presupposes that the trial court found Appellant guilty, not because the evidence demonstrated his guilt, but because the trial court believed itself incapable of reaching a compromise verdict on its own. The record belies this speculative and dubious position. Unlike a jury, which must be instructed on the applicable law, the trial court is presumed to know the law and apply it accordingly. State v. Eley
(1996), 77 Ohio St.3d 174, 180-181; and State v. Minkner (1993),93 Ohio App.3d 127, 133.
Therefore, absent proof to the contrary, this Court has no choice but to assume that the trial court found Appellant guilty of murder rather than a lesser included offense, because the evidence supported such a verdict. Eley, supra, at 180. As noted above, the record plainly supports a guilty verdict.
At the outset, the parties concede that in a bench trial the trial court is presumed to have considered any lesser included offense warranted by the evidence. State v. Buckley (November 22, 1995), Cuyahoga App. No. 68419, unreported; State v. Newton (June 27, 1997), Lake App. No. 96-L-58, unreported; and State v. Bozeman (April 20, 1994), Montgomery App. No. 13741, unreported.
Appellant argues, nevertheless, that in denying his motion for a new trial the trial court rebutted this presumption by stating that, "the issue of lesser included offenses was not raised at trial by counsel or the court, therefore no lesser offenses were considered." (Judgment Entry, June 7, 2000). Appellee responds that the trial court's language simply reflected Appellant's trial strategy, adopting an "an all or nothing" approach to this case. According to Appellee then, Appellant should not now be allowed to argue that a conviction for a lesser offense was more proper.
Both arguments miss the point. The fact of the matter is that the trial court decides a case according to the relevant law, not a party's trial strategy. Consequently, whether or not the trial court considered a lesser included offense is essentially irrelevant once the court determined that all the elements of murder had been proven. See, e.g.State v. Thomas (1988), 40 Ohio St.3d 213, 220 (jury only proceeds to consider whether there is proof sufficient to convict on a lesser included offense when jurors are unable to agree unanimously regarding all the elements of the greater offense). In light of this Court's determination that there was sufficient evidence to demonstrate that Appellant committed an act of murder, the trial court's denial of his motion for a new trial was not erroneous. Accordingly, Appellant's conviction for murder with a firearm specification is hereby affirmed.
Donofrio, J., concurs.
DeGenaro, J., concurs.