[Cite as *State v. Breneman*, 2020-Ohio-4151.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CHAMPAIGN COUNTY**

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-23 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-141 |
| | : | |
| VIRGIL ROYALE LEE BRENEMAN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of August, 2020.

. . . . . . . . . . .

SAMANTHA B. WHETHERHOLT, Atty. Reg. No. 0092010, Champaign County Prosecutor's Office, Appellate Division, 200 North Main Street, Urbana, Ohio 43078
     Attorney for Plaintiff-Appellee

THOMAS M. KOLLIN, Atty. Reg. No. 0066964, 3725 Pentagon Boulevard, Suite 270, Beavercreek, Ohio 45431
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Virgil Royale Lee Breneman was found guilty by a jury of theft of drugs, aggravated possession of drugs, escape, grand theft of a motor vehicle, and receiving stolen property. After merging two offenses, the trial court imposed an aggregate sentence of 42 months in prison, a $5,000 fine, and court costs. The court also terminated Breneman's post-release control in another case and imposed 795 days in prison, to be served consecutively to the 42-month sentence in this case.

{¶ 2} Breneman appeals from his conviction, claiming that the trial court should have granted him a new trial due to prejudicial statements by the prosecutor during opening statements, that he was denied due process when the court allowed a sleeping juror to remain, and that his convictions were against the manifest weight of the evidence. For the following reasons, the trial court's judgment will be affirmed

### I. Manifest Weight of the Evidence

{¶ 3} In his third assignment of error, Breneman claims that his convictions were against the manifest weight of the evidence.

{¶ 4} When reviewing an argument challenging the weight of the evidence, an appellate court may not substitute its view for that of the trier of fact, but reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 5} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 6} At trial in August 2019, the State's evidence at trial established the following facts.

{¶ 7} On September 17, 2018, Breneman was released from prison and placed on post-release control. Parole Officer Chris Caughman reviewed the conditions of Breneman's post-release control with Breneman, and Breneman signed the document listing those conditions. One of the conditions was that Breneman must obtain the permission of his parole officer before changing his residence. Breneman reported that he would be residing at the home of his parents (his mother and step-father) in Champaign County. Breneman's step-father testified that he and his wife had resided at that location since 1981.

{¶ 8} Parole Officer Patrick Powell was assigned as Breneman's initial supervising parole officer upon Breneman's release from prison. Breneman was required to meet with Powell the first and third Thursday of each month, plus have random home visits. Powell testified that Breneman was compliant with his post-release control for the remainder of 2018. Powell had one contact with Breneman in January 2019, and they

had no contact in February 2019. Powell testified at trial that he last had contact with Breneman on January 22, 2019. Powell stated that he was concerned about the lack of contact, and he repeatedly went by Breneman's reported residence (Breneman's parents' home), but no one answered the door. Powell also left voicemail messages for Breneman that went unreturned.

{¶ 9} On March 11, 2019, Parole Officer Brandon Deskins was assigned to be Breneman's parole officer. Deskins attempted to locate Breneman. On April 3 and 4, Deskins went to Breneman's parents' home and left business cards in the front door, asking Breneman to contact him.

{¶ 10} Breneman's mother had significant health issues, which required her to take multiple medications, including 7.5-325mg Hydrocodone-Acetaminophen tablets, known as Norco. The parties stipulated that Hydrocodone-Acetaminophen is a Schedule II dangerous drug and is a controlled substance. On April 7, Breneman's step-father picked up her prescription for a 28-day supply of Norco, which consisted of 112 pills. Bremenan's mother kept her Norco pills on a nightstand in the master bedroom of her home.

{¶ 11} On April 15 or 16, the bottle of Norco pills went missing. Breneman's step-father testified that, on April 15, his wife called him into the master bedroom and told him that her pills were missing. He stated that he looked for the Norco bottle, but did not find it. Breneman's step-father indicated that Breneman and two of Breneman's children (ages 8 and 12) had come to the house that day. Breneman had stayed for approximately 15 minutes. Breneman's step-father did not see Breneman take the pills.

{¶ 12} Breneman's mother believed that the pills went missing on April 16. She

recalled Breneman's being in the master bedroom of her home and asking her if he could have five of her Norco pills. Breneman's mother told him that he could not, explaining "My medicine is counted out; only get so many for 28 days." She left Breneman in the master bathroom, brushing his teeth, while she went into the kitchen. Bremenan's mother testified that the Norco pills were in the master bedroom at that time, and she stated that Breneman left 30 seconds after she went into the kitchen. When she returned to the master bedroom to take a Norco pill, she noticed that the pills were gone, and she called to her husband to tell him the pills were missing. Breneman's mother also did not see Breneman take the pills, but she believed that he did so.

{¶ 13} Breneman's step-father did not know exactly how many pills remained in the bottle on April 15. He thought his wife took four to six pills per day. Breneman's mother also did not know how many pills she had taken, but she estimated that she had taken six to nine pills over the nine days since April 7. She testified that she did not take 50 or 60 pills. The parties stipulated that 30 or more Norco tablets equals or exceeds the bulk amount.

{¶ 14} On April 18, Parole Officer Deskins received a call from Breneman's step-father, who expressed concern that Breneman had stolen his wife's medication. Deskins asked Breneman's step-father if they had filed a police report, and the step-father indicated that he had not. Deskins told him to contact the police and file a report if they believed a crime had been committed.

{¶ 15} Deskins testified that Breneman's step-father further stated that Breneman had not been living at the residence for approximately two weeks. At one point, Breneman's step-father testified that Breneman had lived at their home prior to April 15,

but he had been asked to leave. In different portions of their testimony, Breneman's parents testified that Breneman lived at their home on April 15.

{¶ 16} Parole Officer Deskins declared Breneman to be "whereabouts unknown" and in violation of his post-release control. As a result of that designation, the Adult Parole Authority would wait 30 days and then issue an arrest warrant. Deskins testified that Breneman did not contact him personally or through others.

{¶ 17} Breneman's mother contacted the police about the missing pills on April 19, the day after her husband spoke with Deskins. At trial, Breneman's parents explained the delay, indicating that they had hoped the person who took the pills would return them. Officer Tyler Reasor of the Urbana Police Department responded to Breneman's parents' home. They reported to Officer Reasor that their son, Breneman, had stolen more than 100 Norco pills. Officer Reasor was informed that only Breneman's parents and Breneman had been in the house.

{¶ 18} Officer Reasor attempted to locate Breneman, but was unable to find him. Officer Reasor spoke with Parole Officer Deskins in an attempt to locate Breneman, but Deskins said that he did not know where Breneman was either.

{¶ 19} In May 2019, Sheila Sanders had a 1995 Toyota Corolla that was titled in her name. Sanders had gotten the vehicle from her sister in January 2019, and had agreed to sell the vehicle to her (Sanders's) daughter, Lora Smith, for $400. Sanders testified that Smith had fully paid for the vehicle, but the transfer of title was contingent on Smith's obtaining a valid driver's license; Smith had not yet obtained one.

{¶ 20} Smith testified that she considered herself the owner of the Corolla after the last payment was made in March 2019, and that she bought the car for both herself and

Breneman, whom she was then dating. Smith testified that she was arrested on March 28, and Breneman had the keys to the Corolla then. She indicated that Breneman was supposed to return the keys to her mother.

{¶ 21} On May 6, 2019, Sheila Sanders let Breneman borrow the Corolla. Sanders testified that Breneman told her that he wanted to go to Springfield and would bring the car back that night, in a couple hours. Breneman never returned the car. Sanders tried to contact Breneman, but he had left his phone at her home and she was unable to reach him. Sanders and Smith both testified that they spoke about the car, and Smith told Sanders to report the car as stolen. On May 14, a friend of Sanders spotted the Corolla at a gas station, and Sanders contacted the police.

{¶ 22} On May 14, 2019, Deputy Jayde Sheeley of the Champaign County Sheriff's Office responded to call from Sheila Sanders, reporting her vehicle missing. Detective Glenn Kemp later reviewed Sheeley's report and confirmed with Sanders that the vehicle had not been recovered. Kemp also checked with dispatch and learned that the vehicle had been entered into LEADS as stolen. The vehicle was later recovered in the possession of Suluki Evans. Evans testified that Breneman sold him the Corolla for $500 (Evans said that he still owed $200), and that Breneman led him to believe that he (Breneman) had title to the vehicle.

{¶ 23} After the 30-day period with Breneman listed as "whereabouts unknown" had passed, the Ohio State Highway Patrol issued a warrant for Breneman's arrest.

{¶ 24} On May 20, 2019, Officer Seth Dale, a police officer for Wittenberg University, approached Breneman and another individual after seeing them attempt to open a door to a closed building. After checking with dispatch, Officer Dale learned that

Breneman had an arrest warrant for a parole violation. Breneman attempted to flee but was quickly apprehended and taken to jail.

{¶ 25} On May 21, Parole Officer Deskins learned of Breneman's arrest and interviewed Breneman at the jail about the alleged theft of medication, car theft, and absconding. Breneman denied taking medication from his mother. He told Deskins, "She doesn't get nothing." As for the car, Breneman stated that he had borrowed the car many times and it had never been a problem. Breneman told Deskins, "I paid for that car." Breneman claimed to have returned the car within the next day or two, and he denied knowing where the car was located. When asked about absconding, Breneman told Deskins that he had been living in Springfield on and off at different people's residences, and mentioned two women. Breneman said that his parents' home was still his residence, but he was not staying there. Breneman explained that he did not report as required, because "I knew you guys were going to arrest me. I think Patrick Powell was going to arrest me."

{¶ 26} After deliberations, the jury found Breneman guilty of the five charged offenses: theft of drugs, aggravated possession of drugs, escape, grand theft of a motor vehicle, and receiving stolen property. With respect to the theft of drugs charge (Count 1), the jury further found that the offense involved a dangerous drug and that Breneman previously was convicted of a felony drug abuse offense. As to the aggravated possession of drugs charge (Count 2), the jury further found that the amount of drug involved was equal to or in excess of the bulk amount.

{¶ 27} Breneman did not present any witnesses. Rather, through cross-examination, he raised whether his mother, who managed her use of Norco, was often

confused and may have misplaced the prescription bottle. Defense counsel also raised that Breneman's two children could have been present when the Norco pills went missing. Counsel emphasized that Breneman's mother was unsure of how many pills she had taken from the bottle and how many were left.

{¶ 28} As for the theft of the Corolla, the testimony of Smith and Sanders raised questions about the ownership of the car. Smith had testified that, upon the payment of $400 to her mother, she owned the car. Smith had testified that she bought the car for her and Breneman's use, and in some testimony, she referred at trial to the car as "our car." In closing argument, defense counsel referred to Evans as a "car thief" and argued that his testimony was not credible.

{¶ 29} In cross-examining the parole officers, defense counsel emphasized that Parole Officer Powell was not Breneman's parole officer when Breneman allegedly absconded (April 18 to May 21). Defense counsel asked Deskins how "violator at large" worked, whether Deskins had discretion to pursue escape charges, and whether he knew that Smith was contacting Breneman from jail.

{¶ 30} On appeal, Breneman focuses on his drug possession conviction. He argues that his mother was very ill both in April 2019 and when trial was held, and that she took several medications that "affected her physical and mental well-being." Breneman noted his mother's testimony on cross-examination that she believed that she had worked (without pay) for Facebook as a greeter, helping people to sign on and thanking them for joining. Emphasizing that no one saw him take his mother's medication, Breneman argued that his conviction for theft of drugs and aggravated possession of drugs was against the manifest weight of the evidence.

{¶ 31} In reaching its verdict, the jury was free to believe all, part, or none of the testimony of each witness and to draw reasonable inferences from the evidence presented. *State v. Baker,* 2d Dist. Montgomery No. 25828, 2014-Ohio-3163, ¶ 28. It was the province of the jury, as the trier of fact, to weigh the evidence and determine whether the State had proven, beyond a reasonable doubt, that Breneman committed each of the charged offenses. Upon review of the testimony of both of Breneman's parents, the jury could have reasonably concluded that, on or about April 15, Breneman's mother had her prescription Norco pills on her nightstand, that Breneman stole the pills from the master bedroom, that the amount remaining in the bottle equaled or exceeded the bulk amount, and that the Norco pills were a Schedule II dangerous drug and a controlled substance. The fact that no one observed Breneman take his mother's Norco medication did not require a different conclusion. Breneman stipulated that he had a prior felony drug abuse offense conviction. The jury's guilty verdicts as to theft of drugs and aggravated possession of drugs were not against the manifest weight of the evidence.

{¶ 32} Breneman's third assignment of error is overruled.

## II. Motion for New Trial/ Opening Statements

{¶ 33} In his first assignment of error, Breneman claims that the trial court erred in failing to grant him a new trial due to the prosecutor's informing the jury of Breneman's

three prior felony drug abuse offense convictions during opening statements.[1]

{¶ 34} On August 8, 2019, prior to trial, the parties filed three written stipulations signed by the prosecutor and defense counsel. The first concerned the title for the 1995 Toyota Corolla at issue, the second concerned Breneman's criminal history, and the third concerned the prescription medication prescribed for Breneman's mother. In the criminal history stipulation, the parties agreed and stipulated that Breneman

was previously convicted of or plead guilty to the following felony drug abuse offenses:

1. Possession of Heroin in violation of section 2925.11 of the Ohio Revised Code. This conviction took place on July 21, 2014 in Champaign County, Ohio Common Pleas Court, in case number 2014 CR 121.

2. Possession of Cocaine in violation of section 2925.11 of the Ohio Revised Code. This conviction took place on July 21, 2011 in Champaign County, Ohio Common Pleas Court, in case number 2010 CR 103.

3. Trafficking in Cocaine in violation of section 2925.03 of the Ohio Revised Code. This [c]onviction took place on April 30, 2002 in Champaign County, Ohio Common Pleas Court, in case number 2002 CR 004.

{¶ 35} Trial began on August 12. That morning, before jury selection, the

---

[1] Breneman's sentencing occurred the day after the trial ended, and the trial court filed its written judgment entry of conviction on the same day. Breneman's counsel filed a written motion for a new trial after the trial court filed its judgment entry of conviction. The court ruled on that motion after Breneman filed his notice of appeal of his conviction. The court's decision denying the motion for a new trial is not before us. However, Breneman repeatedly claimed at trial and sentencing that he was denied a fair trial due to the prosecutor's opening statement. We will construe his assignment of error as claiming that the prosecutor's alleged misconduct violated his due process rights and that the court should have ordered a new trial.

prosecutor and defense counsel gave opening statements to the prospective jurors. During the State's opening statement, the prosecutor told the jury that Breneman was released from prison on September 17, 2018, and that he committed the offense of escape by failing to report to his parole officer and moving without notifying his parole officer. The prosecutor further indicated that the parole officers nevertheless "were learning that he [Breneman] was getting into some trouble." (Tr. at 21.) The prosecutor continued:

> They heard of how the Defendant, who was previously convicted of felony drug abuse offenses of trafficking in cocaine in 2002, possession of cocaine in 2010, and possession of heroin in 2014 – They learned how this Defendant had stolen his mother's prescription pain medication. * * *

> The parole officers also learned about how this Defendant took possession of a 1995 Toyota Corolla that didn't belong to him, and he sold the car without the permission of the owner. * * *

(Tr. at 21-22.)

{¶ 36} After the prosecutor completed his opening statement, the court, sua sponte, gave the jury the following instruction:

> Ladies and gentleman, from the prosecutor's opening statement, we've learned that evidence may be received that the Defendant has been previously convicted of certain criminal offenses.

> The Court is instructing you that that evidence may be received because a prior conviction is an element of the offense of theft of drugs in Count One.

That evidence was not received and you may not consider it to prove

the character of the Defendant in order to show that he acted in conformity

or in accordance with that character.

(Tr. at 23-24.)

{¶ 37} At this juncture, defense counsel asked for a sidebar discussion. Counsel stated that he wanted to "strenuously object to the opening statement in that it included offenses of prior history that were not part of the post-release control," that is, Breneman was not on post-release control for those offenses. Defense counsel asked for a mistrial.

{¶ 38} The trial court then asked defense counsel if he agreed that the three referenced drug charges were predicate offenses for the theft of drug allegation. Defense counsel responded that he did. The court indicated that "[t]hat was the purpose for the Court's instruction to the jury." The court denied the motion for a mistrial. It reasoned that, although the court "had a concern with the way the prosecution had positioned those offenses," the opening statement was not evidence and the concern was cured through the jury instruction.

{¶ 39} After the jury was selected, but prior to the presentation of testimony, the trial court, sua sponte, admirably raised with the parties that it had concerns about the criminal history stipulation. The court referred the parties to two cases: *State v. Totarella*, 11th Dist. Lake No. 2002-L-147, 2004-Ohio-1175, and *State v. Overton*, 2017-Ohio-8389, 99 N.E.3d 1007 (5th Dist.). Discussing *Totarella*, the court expressed concern that it would be prejudicial for the jury to learn that Breneman had three convictions and the details of those convictions if Breneman were acknowledging, by stipulation, that he had a prior drug abuse conviction. The trial court told counsel that *Overton* addressed undue

prejudice caused by evidence of a defendant's prior convictions.

{¶ 40} After having an opportunity to read the two cases, the prosecutor argued that they were distinguishable, because in both cases defense counsel had sought to exclude evidence of the prior convictions and the trial court had denied those requests. The prosecutor argued that, in contrast, the trial court here was raising the issue sua sponte. Specifically, the prosecutor noted that the trial court had denied a motion in limine in *Totarella*; the appellate court found that to be error, but overruled the defendant's assignment of error because the defendant had failed to preserve the error at trial. In *Overton*, the trial court overruled an oral motion to stipulate to a prior conviction, and the appellate court determined that the court should have allowed the stipulation. The prosecutor stated that the stipulation at issue stated that Breneman was agreeing that he previously was convicted of a felony drug abuse offense.

{¶ 41} Defense counsel indicated that he had been unaware of the *Totarella* case, and that the defense now wished only to stipulate that Breneman was previously convicted of or pled guilty to a felony drug abuse offense. The prosecutor responded that, given the case law and defense counsel's request, the State would be required to agree to the request. The court indicated that the parties would need to file an amended stipulation. (The new stipulation regarding Breneman's criminal history was filed on August 12, 2019.)

{¶ 42} The court then addressed the fact that the jury had been told of Breneman's prior offenses during opening statements. The court concluded that the error in informing the jury of the three convictions was harmless. Breneman told the court that he did not believe he could get a fair trial due to the prosecutor's opening statement. The

prosecutor responded that he did not intentionally engage in any improper conduct and only told the jury of the three offenses mentioned in the stipulation; he did not mention the rest of Breneman's "very extensive" criminal history or that Breneman was on post-release control for a burglary offense.

**{¶ 43}** None of the State's witnesses discussed Breneman's criminal history, although there was testimony that Breneman was released from prison and placed on post-release control. After the State's final witness, the court read the stipulations regarding Breneman's criminal history and the motor vehicle title. The stipulation regarding Breneman's criminal history read, in its entirety: "The State of Ohio and the Defendant do hereby agree to stipulate that the Defendant, Virgil Royale Lee Breneman, was previously convicted of or pled guilty to a felony drug abuse offense."

**{¶ 44}** During closing argument, the prosecutor stated that, as part of the theft of drug offense, the State had to prove that Breneman had a prior conviction of a felony drug abuse offense. The prosecutor told that jury that the parties had stipulated to that. The prosecutor did not mention Breneman's specific criminal history.

**{¶ 45}** The court subsequently provided instructions to the jury. It told the jury that opening statements and closing statements were not evidence and were designed to assist the jury in evaluating the evidence. In a section entitled "Use of Prior Conviction – Enhancing the Degree of Offense," the court stated:

> Evidence was received that the Defendant has been convicted of a felony
> drug abuse offense. That evidence was received because a prior
> conviction is an element of the offense charged. It was not received, and
> you may not consider it, to prove the character of the Defendant in order to

show that he acted in conformity with the character.

{¶ 46} On appeal, Breneman claims that the trial court should have ordered a new trial due to the prosecutor's prejudicial opening statement. He claims that the prosecutor's reference to his three prior convictions precluded him from receiving a fair trial. The State counters that Breneman's argument is barred by the invited error doctrine, and that Breneman did not timely object to the prosecutor's mentioning of the three prior felony drug abuse offense convictions. We conclude that Breneman invited the prosecutor's reference to the three prior drug offenses in his opening statement. Moreover, with the unique record before us, we further conclude that Breneman was not prejudiced by the prosecutor's isolated reference to Breneman's three prior drug convictions, and no new trial was warranted.

{¶ 47} The indictment for Count 1, alleging theft of drugs as a felony of the third degree, include allegations that Breneman was previously convicted of or pleaded guilty to a felony drug abuse offense, and it listed the 2014 conviction for possession of heroin, the 2011 conviction for possession of cocaine, and the 2002 conviction for trafficking in cocaine. The parties' pretrial stipulation agreed that Breneman had been convicted of those three offenses. The prosecutor's opening statement conformed to the parties' stipulation; it did not add any details about those offenses or mention any other prior offenses.

{¶ 48} Under the doctrine of invited error, "[a] party will not be permitted to take advantage of an error [that] he himself invited or induced." (Citations omitted.) *State v. Fair*, 2d Dist. Montgomery No. 24388, 2011-Ohio-4454, ¶ 69. Defense counsel agreed to a stipulation, prior to trial, that Breneman had been convicted of the three drug offenses

referenced in Count I of the indictment. The prosecutor cannot be faulted for relying on that stipulation in his opening statement, and Breneman cannot now complain about the prosecutor's informing the jury of those convictions in the State's opening statement.

{¶ 49} Moreover, under the facts of this case, any prejudice that resulted from the prosecutor's single reference to Breneman's three specific prior convictions was diminished by court's jury instructions and the nature of the charges at trial. First, the jury was told, immediately after the prosecutor's opening statement, that evidence of Breneman's prior convictions was permitted because a prior conviction was an element of the offense of theft of drugs in Count One, but "[t]hat evidence was not received and you may not consider it to prove the character of the Defendant in order to show that he acted in conformity or in accordance with that character." The court repeated that instruction at the conclusion of the trial. The court also twice instructed the jury that opening statements were not evidence. We presume that the jury followed the trial court's instructions. *State v. Keeton*, 2d Dist. Darke No. 2019-CA-8, 2020-Ohio-950, ¶ 24, citing *State v. Jones*, 90 Ohio St.3d 403, 414, 739 N.E.2d 300 (2000) ("We presume that juries follow the instructions provided to them.").

{¶ 50} Second, as part of the trial, the jury properly heard that Breneman had a prior felony drug abuse offense conviction and that he had previously served a prison sentence, for which he was on post-release control. The parties stipulated that Breneman had a prior felony drug abuse offense, and that stipulation was read to the jury. Although the prosecutor's opening statement provided the specific offense, date and case number for three prior felony drug abuse offense convictions, the prosecutor did not inform the jury of the factual circumstances underlying those offenses or discuss any

other aspect of Breneman's criminal history.

{¶ 51} Upon review of the trial transcript, we cannot conclude that the prosecutor's opening statement prejudicially affected Breneman's substantial rights, resulting in an unfair trial. Accordingly, the trial court did not abuse its discretion in failing to grant Breneman a new trial.

{¶ 52} Breneman's first assignment of error is overruled.

### III. Due Process / Sleeping Juror

{¶ 53} In his second assignment of error, Breneman claims that he was denied his right to due process when the trial court allowed a sleeping juror to remain on the jury panel.

{¶ 54} On the second day of trial, before resuming after a 10:00 a.m. recess, the prosecutor informed the trial court that Parole Officer Deskins, the State's representative, had noticed that Juror No. 10 "appeared to be having difficulty keeping his eyes open." The prosecutor stated that he (the prosecutor) "looked over and observed Juror 10 and his eyes were closed. It was only for a few moments, and he looked up and his eyes opened and his head came up. But his eyes were closed for a few moments, and I felt that I needed to bring it to the Court's attention." (Tr. at 388.)

{¶ 55} The court responded that it "had taken a look at Juror No. 10 as well, and I never thought he was 'sleeping.' Some jurors will tend to listen to evidence without taking notes as if they're listening to music. But I will seek to keep a closer eye as well." (*Id.* at 388-389.) The court asked the prosecutor if he wanted the court to take any action. The prosecutor responded, "No. I just wanted to bring it to your attention." (*Id.* at 389.) Defense counsel stated that he had "no comment." (*Id.*)

{¶ 56} Later that day, the court provided the jury an opportunity to stretch and asked the bailiff to turn on the air conditioning. The court told the prosecutor and defense counsel at sidebar that "[i]t would appear that a couple the jurors were needing an opportunity to stretch." (Tr. at 456.) The court did not identify any particular juror or jurors.

{¶ 57} "An objection to a sleeping juror must be made at trial because the trial court has significant discretion in how it resolves an incident with a sleeping juror." *See State v. Jones*, 2d Dist. Clark No. 2013-CA-63, 2014-Ohio-1540, ¶ 11. "[I]f a sleeping juror has not missed 'large or critical portions' of the proceedings, no prejudice results from that juror's remaining on the jury." *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 112, citing *State v. Sanders*, 92 Ohio St.3d 245, 253, 750 N.E.2d 90 (2001).

{¶ 58} Here, the record does not substantiate that Breneman's due process rights were violated. First, we note that defense counsel did not ask the trial court to take any particular action with respect to the alleged sleeping juror, nor did defense counsel object to the juror's remaining on the panel. Moreover, after the prosecutor brought the juror to the court's attention, the court commented that it did not believe that the juror had been asleep. The prosecutor's statement also indicated that the juror's eyes had been closed "only for a few moments." The record thus does not substantiate that the juror was, in fact, sleeping or that the juror missed "large or critical portions" of the trial.

{¶ 59} Breneman's second assignment of error is overruled.

### IV. Conclusion

{¶ 60} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and HALL, J., concur.

Copies sent to:

Samantha B. Whetherholt
Thomas M. Kollin
Hon. Nick A. Selvaggio