JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Kimberly Steagall appeals from her conviction for receiving stolen property. For the reasons set forth below, we affirm.
 {¶ 2} On July 10, 2003, defendant was indicted for one count of receiving stolen property in connection with a credit card owned by Patricia Emery. Defendant pled not guilty and the matter proceeded to a jury trial on November 5, 2003.
 {¶ 3} For its case, the state presented the testimony of Patricia Emery and South Euclid Police officers Detective Lt. Kevin Nietert, Sgt. Patrick Taormina, Sgt. Dale Mays, and Sgt. Edmond Leoson.
 {¶ 4} Patricia Emery testified that she lives in Dillsboro, Indiana. Approximately fifteen years earlier, her husband permitted his friend, Kenneth Surik to move into their home. In July 2002, Surik asked if defendant could stay with them for a few days and Emery and her husband agreed. On October 18, 2002, Emery asked defendant to leave the home. Thereafter, in November 2002, Emery's husband died following a lengthy illness.
 {¶ 5} After defendant left, Emery noticed that two checks were missing from her check book. Later, she noticed that a charge from a purchase at an Ohio store was posted on her Visa Gold credit card statement. She checked for the credit card and discovered that it was missing from her purse. Emery contacted Visa, reported that the card had been stolen, and cancelled the account. She also reported the incident to the Dearborn County Sheriff's Department. Emery further testified that the credit card was hers, that her husband did not have authority to use the card, and that even if he had such authority, he would never have given defendant permission to use the card.
 {¶ 6} Emery admitted on cross-examination, however, that she had once permitted defendant to cash a check for her and had once made a purchase for defendant using the credit card.
 {¶ 7} Det. Nietert testified that he reads the department's daily reports in order to determine which matters need further investigation and to determine whether charges should be filed. Nietert reviewed a report prepared by Sgt. Taormina on April 9, 2003, in connection with Taormina's off-duty assignment at Giant Eagle on Mayfield Road in South Euclid. Det. Nietert subsequently met with defendant, who was in custody, and advised her of her rights. According to Nietert, defendant admitted that she knew that a credit card recovered from her purse was stolen, but she indicated that she did not wish to speak with him any further.
 {¶ 8} Det. Nietert subsequently spoke to Patricia Emery and learned that the credit card had been reported stolen to the Dearborn County Indiana Sheriff's Department.
 {¶ 9} On cross-examination, Det. Neitert admitted that he did not speak with Emery's husband, and that he did not prepare a written statement to memorialize defendant's oral admission that she knew that the credit card was stolen.
 {¶ 10} Sgt. Taormina testified that he was working on an off-duty assignment for overnight security at Giant Eagle in South Euclid. At approximately 1:00 a.m., he observed defendant proceeding to the exit with unpaid groceries. Sgt. Taormina stopped defendant and she reportedly indicated that she was looking for bread. Taormina advised her that she would not find bread in the parking lot of the store. Defendant then continued to shop but later exited the store through the rear and entered a vehicle which had been parked in the front of the store.
 {¶ 11} Sgt. Mays testified that he responded to a call for assistance at the Giant Eagle. Mays stopped a vehicle in the parking lot and spoke with defendant. Mays asked defendant to roll the window of the car down but she did not do so. Mays then opened the door of the vehicle and asked defendant for identification. Defendant gave Mays her name but indicated that she lived at 3906 Sheffield, in South Euclid. Mays knew that defendant had provided him with an incorrect address. He then had his dispatcher run her social security number. The number came back to a person who did not match defendant's description. Mays then arrested defendant.
 {¶ 12} During the booking process, Mays recovered from defendant's purse an application for a driver's license in the name of "Sue A. Duncan," a loan application in the name of "Raymond L. Emery," and a social security application in defendant's name. {¶ 13} Sgt. Leoson testified that he responded to a call at Giant Eagle on Mayfield Road in South Euclid and spoke with defendant. As the officers attempted to ascertain defendant's name, Leoson asked defendant for permission to look through her purse which was in the trunk of her car. Defendant reportedly authorized Leoson to look through the purse, and he discovered a Visa Gold Card in the name of "Patricia Emery."
 {¶ 14} Sgt. Leoson called the credit card company and learned that the Visa card had been reported stolen.
 {¶ 15} The matter was subsequently submitted to the jury and defendant was convicted of the offense and sentenced to six months imprisonment. She now appeals and assigns two errors for our review.
 {¶ 16} Defendant's first assignment of error states:
 {¶ 17} "The trial court committed plain error pursuant to 52(B) of the Ohio Rules of Criminal Procedure when upon becoming informed that Juror Number 3 was found to be sleeping, it failed to replace and/or question Juror Number 3."
 {¶ 18} Within this assignment of error, defendant contends that the trial court committed plain error when it noted on the record that a juror had been sleeping, but did not inquire as to how much testimony the juror may have missed and did not replace the juror. Failure to raise an issue at trial acts as a waiver of the issue on appeal except for plain error. State v. Smith,80 Ohio St.3d 89, 107, 1997 Ohio 355, 684 N.E.2d 668. Crim.R. 52(B) provides that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The standard for noticing plain error is set forth in State v. Barnes, 94 Ohio St.3d 21, 27,2002-Ohio-68, 759 N.E.2d 1240:
 {¶ 19} "First, there must be an error, i.e., a deviation from a legal rule. * * * Second, the error must be plain. To be `plain' within the meaning of Crim.R. 52(B), an error must be an `obvious' defect in the trial proceedings. * * * Third, the error must have affected `substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." (Citations omitted.)
 {¶ 20} However, notice of plain error should be done "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long
(1978), 53 Ohio St.2d 91, 97, 372 N.E.2d 804.
 {¶ 21} A trial court is vested with discretion in deciding whether to remove or retain a juror. State v. Hutton (1988),53 Ohio St.3d 36, 559 N.E.2d 432.
 {¶ 22} In State v. Sanders, 92 Ohio St.3d 245,2001 Ohio 189, 750 N.E.2d 90, the Supreme Court considered whether a trial judge committed reversible error when if failed to replace a juror who had been sleeping, failed to ascertain what, if any, of the trial proceedings she may have missed.
 {¶ 23} In determining that plain error had not occurred, the Court stated:
 {¶ 24} "* * * Sanders did not request either remedy at trial, nor did he express dissatisfaction with the trial judge's handling of the matter. See United States v. Kimberlin (C.A.7, 1986), 805 F.2d 210, 244; United States v. Newman (C.A.1, 1992), 982 F.2d 665, 670. Moreover, "there is no per se rule requiring an inquiry in every instance of alleged [juror] misconduct." United States v. Hernandez (C.A.11, 1991),921 F.2d 1569, 1577; see, also, Newman, 982 F.2d at 670. Thus, in the absence of plain error, this claim is waived. See, generally,State v. Childs (1968), 14 Ohio St.2d 56, 43 Ohio Op. 2d 119,236 N.E.2d 545.
 {¶ 25} "We find no plain error. A trial court `has considerable discretion in deciding how to handle a sleeping juror.' United States v. Freitag (C.A.7, 2000), 230 F.3d 1019,1023; see, also, United States v. Bradley (C.A.3, 1999),173 F.3d 225, 230. There is no evidence that the juror missed large or critical portions of the trial. See Freitag,230 F.3d at 1023; United States v. Barrett (C.A.9, 1983), 703 F.2d 1076,1083, fn. 13. The taped conversations between inmate and DRC negotiators were not critical. (The defense also alleged that a juror had fallen asleep during Law's testimony, but nothing in the record shows which juror allegedly slept or what part of Law's testimony that juror allegedly missed.)
 {¶ 26} "Moreover, the trial judge was watching the situation, and he admonished the jury to be alert. Compare United States v.McFerren, 1998 U.S. App. LEXIS 7199 (Apr. 8, 1998), C.A.6 No. 96-5458, unpublished opinion, 1998 WL 180514 (affirming conviction where judge "kept a watchful eye on the jury" and, when necessary, admonished jurors to stay awake)."
 {¶ 27} In this matter, the record indicates that, after the jury was excused on the first day of trial, the trial court noted for the record that Juror Number 3 was asleep and had to be awoken by Juror Number 2 when the jury left the courtroom. (Tr. 197). Neither the court nor defendant's trial counsel noted the duration of the incident nor the portions of testimony which may have been missed. Moreover, defendant's attorney did not ask the court to speak to the juror, did not ask for the juror to be replaced, did not ask for any evidence to be repeated and did not move for a mistrial.[1] Accordingly, the record presented to us on appeal does not indicate when the juror fell asleep and we cannot determine what, if anything, the juror missed. Therefore, based upon the record as presented,[2] and because the Supreme Court has held that there is no per se rule requiring an inquiry in every instance of alleged juror misconduct, we are compelled to reject defendant's claim that plain error occurred in connection with this ruling. AccordState v. Houseman (June 29, 2000), Belmont App. No. 98 BA 4;State v. Brletich (June 28, 2000), Columbiana App. No. 98 CO 84.
 {¶ 28} This assignment of error is overruled.
 {¶ 29} Defendant's second assignment of error states:
 {¶ 30} "The conviction of the defendant-appellant for the charge of receiving stolen property is against the manifest weight of the evidence."
 {¶ 31} When reviewing a claim that a judgment of conviction rendered by the court is against the manifest weight of the evidence, we determine whether the court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. Our decision to grant a new trial based on the weight of the evidence is "exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 32} Receiving stolen property is defined in R.C.2913.51(A) as follows:
 {¶ 33} "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."
 {¶ 34} We do not find this to be the exceptional case in which the evidence weighs heavily against the conviction. The state's evidence, which was unrebutted, established that defendant had briefly lived at Patricia Emery's home. After defendant moved out, Emery noticed that an improper charge was posted to the account, and the card was missing from her purse. The state's evidence further demonstrated that Emery had sole authority over the account. Following defendant's arrest at Giant Eagle, the credit card was recovered from her purse. Det. Nietert testified that defendant admitted that she knew that the credit card was stolen. The conviction for receiving stolen property is not against the manifest weight of the evidence.
 {¶ 35} This assignment of error is without merit. Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J. and Gallagher, J., Concur.
[1] We do not imply that counsel was ineffective in this regard, as at least one court has observed that defense counsel may, as a matter of trial strategy, refrain from replacing a juror in this instance where he or she believes that the juror may ultimately be favorable for the defense. See State v.Williams (March 10, 1997), Stark App. No. 1995CA00262.
[2] We note that an allegation that a juror was sleeping alleges misconduct which may be a basis for a motion for a new trial under Crim. R. 33 (A).