*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 04a0383p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 03-6458

JERRY WAYNE SHERRILL,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 01-00015—Robert L. Echols, Chief District Judge.

Argued: September 22, 2004

Decided and Filed: November 5, 2004

Before: MARTIN, COLE, and GIBBONS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Charles R. Ray, RAY & FRENSLEY, Nashville, Tennessee, for Appellant. Stephan E. Oestreicher, Jr., UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Charles R. Ray, RAY & FRENSLEY, Nashville, Tennessee, for Appellant. Stephan E. Oestreicher, Jr., UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. Jerry Wayne Sherrill appeals his conviction on charges of possession of and conspiracy to manufacture methamphetamine. Sherrill argues that juror and prosecutorial misconduct rendered his trial fundamentally unfair. Because he fails to show reversible error or prejudice, we affirm the judgment of the district court.

I.

At trial, the prosecution presented the following evidence: at the time he was arrested, 1) a methamphetamine lab and mixtures used in methamphetamine production were found in Sherrill's truck; 2) Sherrill was driving away from his property in that truck when three police vehicles arrived; 3) an officer testified that Sherrill "gunned the engine," presumably attempting to escape; 4) Sherrill was wearing coveralls containing packages of methamphetamine of the same mixture as found in his truck. In rebuttal closing argument, the prosecutor made the following concluding statement:

1

Ladies and gentlemen, the government submits to you that it's presented a case of manufacture, it's presented a case of possession with intent of a mixture or substance containing a detectable amount of methamphetamine in excess of 500 grams, and that man is guilty of it.

Defense counsel objected to that statement and moved for a mistrial. The district court denied the motion, but ruled that the government attorney improperly interjected his personal opinion as to Sherrill's guilt and, following an exhaustive exposition of the integrity of a jury and the error of the prosecutor's statement, gave this curative jury instruction:

[The government attorney], in concluding his closing remarks, made reference to the evidence which he believed supported his side of the case. But he also ended with a reference after pointing to the evidence because the defendant Sherrill is guilty, or words to that effect. That was improper. [The government attorney]—we had a discussion about it. He was apologetic, and I simply am telling you, ladies and gentlemen, that you are to strike that from your consideration. Do not consider it in any way.

Subsequently, the jury convicted Sherrill on all charges.

Following the verdict, defense counsel filed a motion with supporting affidavits seeking permission to interview three members of the jury at random to ascertain whether one of the jurors had slept throughout the trial. In one affidavit, Sherrill stated that his attorney, while in federal court on another matter, was approached by Sherrill's courtroom bailiff. As described in the affidavit, the bailiff told the attorney that he "could not believe that [a] venireman . . . had slept through most of the trial and that the trial judge was aware of the situation."

The district court declined the request for interviews, stating that Federal Rule of Evidence 606(b) precludes juror testimony on such matters. However, the court permitted Sherrill to give the jurors questionnaires, and ordered him to submit written questions to the court for approval. The court limited Sherrill's inquiry to "questions of whether extraneous prejudicial information was improperly brought to the attention of the jury or whether any outside influence was improperly brought to bear upon any juror." After approving Sherrill's proposed questions, the court ordered its clerk to send the questionnaire to each of the jurors, requesting that the jurors return completed questionnaires to the clerk, who would then forward copies to counsel. No further action was taken.

Sherrill timely appealed, arguing that the trial court erred in denying him an opportunity to interview the jurors and in denying his mistrial motion based on prosecutorial conduct. He also argues that the cumulative effect of juror and prosecutorial misconduct rendered his trial fundamentally unfair. We disagree, for the reasons discussed below.

II.

A.     Jury Misconduct

Sherrill contends that the district court abused its discretion in denying his request to interview the jury about allegations that a juror slept through the trial. He argues that the court-sanctioned questionnaire did not adequately protect his Sixth Amendment right to a fair jury.

It is well-established that "[t]he trial judge is in the best position to determine the nature of the alleged jury misconduct" and the "appropriate remedies for any demonstrated misconduct." *United States v. Copeland*, 51 F.3d 611, 613 (6th Cir.), *cert. denied*, 516 U.S. 874 (1995). In reviewing the district court's decision for abuse of discretion, *id.*, we conclude that the court properly denied the motion. Sherrill has provided no evidence—indeed, he makes only a vague assertion—that the juror was in fact sleeping, and that such behavior had a prejudicial effect on his defense. *See United States v. Newman*, 982 F.2d 665, 670

(1st Cir.), *cert. denied*, 510 U.S. 812 (1992) (holding that a party claiming juror misconduct due to "inattention" cannot merely allege the purported conduct but must affirmatively establish the juror's inattention, and the resolution of any disputed issue of fact rests within the discretion of the trial judge). Moreover, even if Sherrill had presented clear evidence of a sleeping juror, *Tanner v. United States* unequivocally holds that juror misconduct—in that case, alcohol and drug use during trial—that led some jurors to fall asleep and suffer from impaired reasoning did not justify departure from Rule 606(b)'s "protection of jury deliberation from intrusive inquiry." 483 U.S. 107, 128 (1989). Thus, the district court properly denied Sherrill's request to interview members of the jury.

B.        Prosecutorial Misconduct

Sherrill also contends that the district court erred in denying his motion for mistrial because of prosecutorial misconduct. Sherrill argues that the prosecutor's statement in closing argument that "that man is guilty" constitutes reversible error.

"[A] determination of the fairness to the accused is the primary concern in ruling upon a mistrial motion. . . ." *United States v. Atisha,* 840 F.2d 920, 926 (6th Cir. 1986). Whether the government's closing argument amounted to prosecutorial misconduct and whether the argument rendered the trial "fundamentally unfair" are mixed questions of law and fact that are reviewed de novo. *United States v. Tarwater*, 308 F.3d 494, 510-11 (6th Cir. 2002).

When reviewing claims of prosecutorial misconduct, we determine first whether the prosecutor's statement was improper. *See United States v. Krebs*, 788 F.2d 1166, 1177 (6th Cir. 1986). The statement in this case was not improper. The trial transcript shows that the prosecutor prefaces his concluding remark with "[t]he government submits." His final phrase, "that man is guilty," may be construed as a personal accusation only when viewed in isolation and out of context. To restate, the prosecutor said:

> Ladies and Gentleman, the government submits to you that it's presented a case of manufacture, it's presented a case of possession with intent of a mixture or substance containing a detectable amount of methamphetamine in excess of 500 grams, and that man is guilty of it.

According to the remark as it is transcribed in the record, the prosecutor did not intimate a personal opinion as to Sherrill's guilt. The statement was not improper.

Even if it were improper, Sherrill does not satisfy the second factor—reversible error—in this analysis. *See United States v. Carroll*, 26 F.3d 1380, 1389-90 (6th Cir. 1994). To constitute reversible error, it must be shown that: 1) the proof of the defendant's guilt is not overwhelming; 2) the defense counsel objected; and 3) the trial court failed to cure the impropriety by failing to admonish the jury. *United States v. Monus*, 128 F.3d 376, 394 (6th Cir. 1997); *Carroll*, 26 F.3d at 1385-86 (citing *United States v. Bess*, 593 F.2d 749, 757 (6th Cir. 1979)).

Here, the case against Sherrill was overwhelming (Sherrill was driving his truck, which contained a methamphetamine lab and mixtures, away from police, while carrying similar methamphetamine mixtures on his person). Sherrill makes no argument to the contrary. He only argues that the trial court's curative instruction was insufficient "to mitigate the negative and highly prejudicial impact of the remarks on the jurors' minds." Yet, the court issued the instruction immediately after the statement was made and thoroughly explained why the statement should have no effect on the jury's deliberations. The court's instruction was sufficient to overcome any potential for prejudice. Any alleged impropriety in the prosecutor's statement, therefore, was harmless.

C.          Cumulative Effect

Because Sherrill does not establish harm or error based on either juror or prosecutorial misconduct, his argument that the cumulative effect of such misconduct renders his trial fundamentally unfair is without merit.

### III.

For the foregoing reasons, we affirm the judgment of the district court.