The STATE of Ohio, Appellee,

v.

MAJID, Appellant.

[Cite as *State v. Majid*, 182 Ohio App.3d 730, 2009-Ohio-3075.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 90491.

Decided June 25, 2009.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Blaise D. Thomas, Assistant Prosecuting Attorney, for appellee.

Paul Mancino Jr., for appellant.

---

ANN DYKE, Judge.

{¶ 1} Defendant, Arif Majid, a.k.a. Cedric Parker, appeals from his convictions for one count of murder and two counts of attempted murder, plus various specifications. Due to the extensive evidence on the record that at least one of the jurors slept through numerous portions of the trial, including eyewitness testimony, this matter must be reversed and remanded for a new trial.

{¶ 2} On December 6, 2005, defendant was indicted pursuant to a five-count indictment in connection with the September 4, 2006 shooting at Milton's Lounge in Euclid. In Count One, defendant was charged with aggravated murder with one-year and three-year firearm specifications, three mass-murder specifications, notice of prior conviction, and repeat violent offender specifications. This charge made defendant eligible for the death penalty. Count Two charged him with having a weapon while under disability. Counts Three, Four, and Five charged him with attempted murder with one-year and three-year specifications, notice of prior conviction and repeat violent offender specifications. Defendant pleaded not guilty and the matter proceeded to a jury trial on June 29, 2006. One of the defendant's trial attorneys was subsequently admitted to the hospital, and the trial court declared a mistrial.

{¶ 3} The matter then proceeded to trial on July 2007. The state presented evidence that defendant and three other individuals were dancing at Milton's. Defendant took his shirt off, and he and others were eventually asked to leave the bar Milton Franklin III attempted to lock the front door.

{¶ 4} Milton III got his gun from the bar office and went outside. Defendant approached and said that he had something for him. Milton III fired "warning shots" toward defendant. The ejected patrons attempted to get back into the bar. Defendant broke the front window and fired a weapon into the bar in rapid succession. Following the shooting, Jerome Thomas, Marcus Barnes, Wesley Williams, and Rayshawn Whitsett were injured. Jerome Thomas later died of his injuries.

{¶ 5} In five separate instances during the trial, it was brought to the court's attention that a juror had been sleeping. The court did not admonish the juror, did not remove any juror, and near the end of the trial said, "I saw it. So what. Let him sleep. You guys picked the jury. I didn't."

{¶ 6} Defendant did not present any witnesses on his own behalf and was subsequently convicted of murder as a lesser included offense of Count One, two counts of attempted murder (Marcus Barnes and Rayshawn Whitsett), and numerous specification. He was sentenced to 43 years of imprisonment.

{¶ 7} Defendant now appeals and assigns 16 errors for our review. Within his second assignment of error, defendant asserts that he was denied his right to a fair trial because jurors fell asleep and were otherwise frequently inattentive. Defendant further complains that the trial court did not effectively deal with this problem.

{¶ 8} The state claims that the defense has waived this issue because it was the state that first raised an issue with the juror who was repeatedly found to be sleeping, and at this time, the defense objected and specifically requested that this juror remain on the panel.

{¶ 9} We reject the state's claim of waiver, as the record does not support the state's claim. The record indicates that the objection that the state lodged concerned the juror who independently rode the public elevator to the courtroom in violation of the rules. The state's objection did not concern the issue of sleeping. The defense objected to removal of the juror on the basis of the elevator complaint. The issue of jurors sleeping or being inattentive was not raised, and there was no waiver.

{¶ 10} Turning to the substantive law, we note that sleeping is a form of juror misconduct. *United States v. Sherrill* (C.A.6, 2004), 388 F.3d 535. Moreover, a juror who sleeps through much of the trial testimony cannot be expected to perform his duties. *United States v. Warner* (C.A.6, 1982), 690 F.2d 545, citing Fed.R.Crim.P. 24(c). The removal of a juror who is sleeping is one of the prerogatives of the trial court and does not require the consent of any party. *United States v. McDonald* (C.A.6, 1999), 173 F.3d 430, 1999 WL 149658, *10, citing *United States v. Smith* (C.A.5, 1977), 550 F.2d 277, 285.

{¶ 11} In *State v. Sanders* (2001), 92 Ohio St.3d 245, 750 N.E.2d 90, the Ohio Supreme Court held that a trial court has broad discretion in handling a situation in which a juror has fallen asleep during testimony. Accord *United States v. Copeland* (C.A.6, 1995), 51 F.3d 611. In evaluating the case for plain error, *Sanders* noted that in the absence of evidence, the juror had missed "large or critical portions of the trial," and when the trial judge watched the situation and admonished the jury to be alert, it was not plain error for the trial court to leave the juror on the panel. Id.

{¶ 12} Courts have also rejected claims of error raised in this connection when they are premised upon isolated incidents, when the defendant is the only person who witnesses the alleged misconduct, or when the claim is not raised until the trial is over. See *United States v. Sherrill* (C.A.6, 2004), 388 F.3d 535; *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315 (finding no plain error when the trial court indicated that it would remain "aware" of whether a juror was sleeping and did not question or remove a juror after the defendant complained that the juror had been asleep. The court noted that "her position [is] pretty much to just sit there and look straight ahead," and the issue was not raised again); *State v. Skinner* (Mar. 30, 1984), Lake App. No. 9–261, 1984 WL 6316 (unverified allegation that a juror was sleeping did not constitute plain error); *State v. Terry*, Summit App. No. 23043, 2007-Ohio-6790, 2007 WL 4415363 (plain error not established when there was no evidence that a juror was actually sleeping, as defense counsel stated only that court should take a break if it sees a juror sleeping); *State v. Steagall*, Cuyahoga App. No. 83991, 2004-Ohio-5035, 2004 WL 2340289 (plain error not established "on record as presented" when one instance of sleeping was noted, but it was not shown what the juror had missed; appellate court noted, however, that "an allegation that a juror was sleeping alleges misconduct which may be a basis for a motion for a new trial under Crim. R. 33").

{¶ 13} Moreover, the United States Court of Appeals for the Sixth Circuit has noted that numerous instances of jurors' sleeping during testimony may constitute a due process violation. See *Jackson v. A–C Prod. Liab. Trust* (Mar. 31, 2009), N.D.Ohio No. 1:99 CV 10802, 622 F.Supp. 641, citing *United States v. McFerren* (Apr. 8, 1998), C.A.6 No. 96–5458, 1998 WL 180514. Due process mandates that the defendant is entitled to have a jury hear and evaluate the evidence, and jurors are instructed as a matter of law each day that it is their "responsibility to listen carefully to the evidence." Repeated instances of sleeping by one or more jurors and sleeping during eyewitness testimony cannot be deemed to have satisfied this responsibility and violates due process. If one or more jurors are sleeping, the right to a jury trial has been impaired.

{¶ 14} In this instance, we note that defendant was eligible to receive the death penalty. The record reflects the following:

{¶ 15} "MR. THOMAS: Your Honor, may we approach? (To a juror:) No. Stop. Stop that.

{¶ 16} "THE COURT: I heard you, Mr. Thomas, after I said you could approach, say, 'Stop. Stop.' Who were you talking to?

{¶ 17} "MR. THOMAS: I was about to inform the Court that Mr.—is it Brown? Juror number one was soundly asleep, had his mouth agape, eyes closed, and then as we approached, juror number two recognized juror number one's condition and hit him on the arm and woke him up.

{¶ 18} "So I'm drawing to the Court's attention the fact that Mr. Brown's been sleeping.

{¶ 19} "THE COURT: He's rubbing his eyes as if he just awoke at the present time. Well, keep close attention on that. Thank you."

{¶ 20} " * * *

{¶ 21} "(* * * [O]utside the presence of the jury as follows:)

{¶ 22} "THE COURT: Let the record reflect that Mr. Brown is asleep again with his mouth agape, snoring as well.

{¶ 23} "MR. THOMAS: This is during eyewitness testimony. Mr. Brown is going to sleep through this whole witness's testimony with mouth open and snoring.

{¶ 24} " * * *

{¶ 25} "MR. THOMAS: * * * Every time Mr. Brown is asleep and Mr. Dawson sees me picking up on it to bring it to your attention, Mr. Dawson nudges him.

{¶ 26} " * * *

{¶ 27} "JUROR DAWSON: Only thing I did during the whole thing was I woke him up because he fell asleep or something.

{¶ 28} " * * *

{¶ 29} "MR. GLENN: I did notice that juror number nine had his eyes closed and he had his head resting on the wall * * *.

{¶ 30} "THE COURT: Thank you very much. * * *

{¶ 31} "MR. THOMAS: Miss Sowul brings to my attention Mr. Brown is sleeping again.

{¶ 32} "THE COURT: I saw it. So what. Let him sleep. You guys picked this jury, I didn't."

{¶ 33} This record compels the conclusion that plain error occurred in connection with the court's handling of the problem of a juror's repeatedly sleeping and another juror also sleeping. Multiple instances of sleeping were reported to the judge, and she plainly acknowledged the ongoing problem but did not carefully monitor the situation, and rather than admonishing the jury to be alert, the judge stated, "I saw it. So what. Let him sleep. You guys picked the jury. I didn't." The extensive evidence of sleeping, including sleeping during eyewitness testimony, constitutes pervasive juror misconduct and plain error. This level of misconduct cannot be disregarded in any trial, and especially when, as here, the defendant potentially faces the death penalty. The trial judge clearly abused her discretion in failing to realize that the juror could not perform his duties and in allowing this juror to participate in deliberations in this matter.[1] Moreover, the numerous instances of jurors' sleeping deprived the defendant of his right to have 12 attentive jurors decide his fate and violated his right to due process.

{¶ 34} The assignment of error is well taken.

{¶ 35} The matter is reversed and remanded for a new trial.

Judgment reversed
and cause remanded.

JONES, J., concurs.

STEWART, P.J., dissents.

STEWART, Presiding Judge, dissenting.

{¶ 36} I respectfully dissent from the decision reached by the majority. While I agree that juror sleeping is a form of jury misconduct, the trial court is vested with discretion in determining how to handle such a matter. Additionally, the appellant did not request a mistrial or that the juror be removed from service. Therefore, he has demonstrated no prejudice.

{¶ 37} The prosecutor first brought to the attention of the trial court the fact that a juror was sleeping. Appellant did not object to the trial court's handling of the matter, nor did he request that the juror be removed. In the absence of any action on his part, appellant cannot be heard to complain that the court should have removed the juror. To the contrary, appellant's silence in the face of the state's notice to the court actually suggests that appellant may have had a desire to keep the juror.

---

1. The record also indicates that one of the alternate jurors complained about not being able to deliberate whereas others were "not the best candidates to be deliberating at this time * * *."

{¶ 38} Furthermore, the Supreme Court of Ohio in *State v. McKnight,* 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, noted that it is not plain error for the court to fail to remove a sleeping juror. In *McKnight,* at ¶ 184, the state twice told the court about sleeping jurors without objection from the defendant. Addressing a claim of error, the court stated:

{¶ 39} "It is well established that ' "[t]he trial judge is in the best position to determine the nature of the alleged jury misconduct" and "the appropriate remedies for any demonstrated misconduct." ' *United States v. Sherrill* (C.A.6, 2004), 388 F.3d 535, 537, quoting *United States v. Copeland* (C.A.6, 1995), 51 F.3d 611, 613. Moreover, a trial court has ' "considerable discretion in deciding how to handle a sleeping juror." ' *State v. Sanders* (2001), 92 Ohio St.3d 245, 253, 750 N.E.2d 90, quoting *United States v. Freitag* (C.A.7, 2000), 230 F.3d 1019, 1023."

{¶ 40} For the reasons stated above and based on the record in this case, I would overrule this assigned error regarding the sleeping juror and address appellant's remaining 15 assignments of error.