[Cite as *State v. Bonner*, 2024-Ohio-4717.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio

       Appellee

v.

Alonzo L. Bonner, Jr.

       Appellant

Court of Appeals No. E-23-023

Trial Court No. 2020 CR 0051

**DECISION AND JUDGMENT**

Decided: September 27, 2024

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Kristin R. Palmer, Assistant Prosecuting Attorney, for appellee.

Andrew Schuman, for appellant

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal of a March 17, 2023 judgment of the Erie County Court of Common Pleas. Following a jury trial, the defendant-appellant, Alonzo Bonner, was convicted of two counts of felonious assault, improperly discharging a firearm into a habitation and having weapons under a disability, plus related firearm specifications. Bonner was also found to be a repeat violent offender. The trial court sentenced Bonner to serve 26 to 30 years in prison. On appeal, Bonner alleges that he was deprived of a

fair trial and that he received ineffective assistance of counsel. For the following reasons, we affirm the judgment of the trial court.

## I. Background

{¶ 2} The facts of this case are largely not in dispute, perhaps because the key events were captured on multiple surveillance videos. In the early morning hours of December 31, 2019, Bonner and two friends, Angel Kennedy and William Porter, were playing pool at the Sail Inn, a bar located at 631 Meigs Street in Sandusky, when they were approached by two patrons, Brandon Denney and Michael Smith. An altercation ensued, during which Smith "pulled a knife" on the trio, and Denney and Smith were then instructed by management to leave. During the altercation, surveillance cameras from within the bar showed Bonner placing a phone call, and evidence offered at trial established that the call was placed to Natasha Nicki Butler, who lived three blocks away. Bonner told Butler to get a bag with a gun in it and that someone would pick it up shortly. After the call, Angel Kennedy left the Sail Inn and retrieved the weapon. Exterior surveillance cameras showed that the argument between the groups continued outside, as Denney and Smith drove off in Denney's white truck.

{¶ 3} The state alleged that Bonner "met up" with Kennedy and took possession of the gun, then returned to the exterior patio of the Sail Inn. Within ten minutes, the white truck returned, and a gunfight ensued. Denney and Smith, armed with a shot gun and a handgun, fired the first shots from the truck, before driving away. Bonner, who was standing on a sidewalk, is shown ducking behind parked cars and cocking the handgun.

2.

{¶ 4} A few minutes later, Bonner and his friends were on Perry Street, when the white truck reappeared.  This time, Bonner fired eight rounds at the truck.  The evidence established at trial that four bullets hit the back of Denney's truck.  Two bullets hit the home located at 535 Perry Street and another hit the home located at 601 Perry Street.  After firing eight times, Bonner is shown walking in the direction of Butler's home, where the state alleged, he hid the gun.

{¶ 5} Withing hours of the shootings, police were contacted by the homeowner at 625 Perry Street whose exterior security camera had captured Bonner firing all eight rounds.  Another property owner, located at 535 Perry Street, reported that two bullets entered his home, one into an upstairs window and another through a downstairs window.  Another bullet was found in an unoccupied structure located at 601 Perry.  During the investigation, police recovered seven of the eight bullets fired by Bonner's gun and all eight shell casings.  Ballistics testing on the weapon seized from Butler's home established that it was the same weapon that fired those eight rounds, and DNA samples taken from the weapon were confirmed to be Bonner's.

{¶ 6} The state alleged that the weapon used by Bonner had been reported stolen in Seneca County, a few months before.

{¶ 7} Bonner was indicted on February 12, 2020, of committing two counts of felonious assault, in violation of R.C. 2903.11(A)(2) and (D)(1)(a), both felonies of the second degree (Counts 1 and 2); improperly discharging a firearm at or into a habitation or a school safety zone, in violation of R.C. 2923.161(A)(1) and (C), a felony of the second degree (Count 3); having weapons while under disability, in violation of R.C.

3.

2923.13(A)(2) and (B), a felony of the third degree (Count 4); and receiving stolen property, in violation of R.C. 2913.51(A)( and (C), a felony of the fourth degree (Count 5). Counts 1, 2 and 3 each included a three-year firearm specification, pursuant to R.C. 2941.145(A) and a repeat violent offender specification, pursuant to R.C. 2941.149(A).

{¶ 8} The trial was delayed many times and for a variety of reasons, mostly upon requests by Bonner, including multiples motions to conduct discovery, motions to be furloughed, motions to continue the trial date, and Bonner's change of counsel, resulting in renewed demands for discovery and a motion to suppress evidence and request for a hearing. In particular, Bonner filed a "motion for continuance" on March 10, 2021, which included a waiver of his right to a speedy trial.

{¶ 9} Bonner was tried over four days, beginning on February 21, 2023. At the conclusion of the trial, Bonner was found guilty as to Counts 1, 2, 3 and 4, plus the firearm specifications. He was found not guilty of Count 5, the receiving stolen property offense. Following a sentencing hearing, Bonner was also found to be a repeat violent offender and sentenced to serve 26 to 30 years in prison. In his appeal, Bonner raises seven assignments of error:

> 1. The trial court erred when it denied the motion to suppress without hearing [sic], in violation of Mr. Bonner's rights under the Ohio and United States Constitutions.

> 2. The trial court erred in admitting evidence Mr. Bonner sought to have suppressed, without first determining the admissibility of the evidence of Mr. Bonner's rights under the Ohio and United States Constitutions.

4.

3. The trial court erred in excusing a juror based on race, in violation of Mr. Bonner's rights under the Ohio and United States Constitutions.

4. The trial court erred in failing to declare a mistrial when a juror was caught sleeping, in violation of Mr. Bonner's rights under the Ohio and United States Constitutions.

5. The State violated Mr. Bonner's rights under the Ohio and United States Constitutions by failing to provide a bill of particulars that complied with *State v. Haynes,* the Ohio Revised Code and the Criminal Rules.

6. Trial counsel was ineffective for failing to move to dismiss based on denial of Mr. Bonner's rights under the Ohio and United States Constitutions to a speedy trial and for failing to move for mistrial based on juror's somnolescence. [sic]

7. Trial counsel was ineffective for failing to move to dismiss based on denial of Mr. Bonner's rights under the Ohio and United States Constitutions to a speedy trial.

## II. Bonner lacked standing to challenge the evidence seized pursuant to a search warrant.

{¶ 10} In his first assignment of error, Bonner alleges that the trial court erred in denying his request for a hearing on his motion to suppress. In his second assignment of error, Bonner claims that the court further erred by allowing the evidence at issue to be introduced at trial. We address the arguments together.

5.

{¶ 11} In his motion, filed on September 13, 2022, Bonner claimed that evidence obtained pursuant to a "warrant search of residence," should be suppressed because the warrant contained statements that were "false and misleading" and "[un]reliable" and based upon "double hearsay." Bonner also complained that "the affiant" did not "personally witness any of the said evidence" and that the search warrant was "executed while [no one] was home." Bonner failed to identify the evidence that was obtained during the search or the problematic statements. He also failed to identify the location of the search except to say that it is "a residence" where he "does not live." Bonner added that "there is no evidence that [he] is somehow connected to said residence." He attached no supporting materials to his motion to suppress, including the search warrant or affidavit. Bonner requested a hearing on his motion.

{¶ 12} The state objected. It argued that Bonner lacked standing to contest the search warrant for "the lower apartment at 729 Currant Street in Sandusky," and it identified the evidence seized as a "Smith & Wesson 40 caliber gun." In addition to its standing argument, the state argued that Bonner's motion was untimely (by more than two years) and that, because Bonner's motion failed to include an offer of proof, specifically outlining how the affidavit was faulty, it was legally deficient and must be denied. In a one-sentence order, the trial court denied Bonner's motion and request for a hearing. Bonner filed for reconsideration, in which he addressed the timeliness argument only.[1]

---

[1] We note that Bonner—in his reconsideration request—did not dispute that the subject of the warrant was indeed the property located at 729 Curran Street or that the

6.

{¶ 13} "Fourth Amendment rights are personal in nature and may not be vicariously asserted by others." *State v. Dennis*, 79 Ohio St.3d 421, 426 (1997), citing *Alderman v. United States*, 394 U.S. 165, 174 (1969). "Consequently, a person who alleges error by the use of evidence taken from someone else's property cannot claim that his own rights have been violated." *State v. Renner*, 2003-Ohio-6550, ¶ 7-11 (12th Dist.), citing S*tate v. Coleman*, 45 Ohio St.3d 298, 306 (1989). Only those whose personal rights have been violated can raise Fourth Amendment claims. *Id.* Therefore, in order to challenge a search or seizure on Fourth Amendment grounds, a defendant "bears the burden of proving not only that the search was illegal, but also that he had a legitimate expectation of privacy in the area searched." *Dennis* at 426.

{¶ 14} "Whether a defendant has standing to challenge the constitutionality of the search of a home depends upon 'whether the defendant had an expectation of privacy in the home that society is prepared to recognize as reasonable.'" *State v. Messenger,* 2010-Ohio-479, ¶ 13 (3d Dist.), quoting *State v. Williams,* 73 Ohio St.3d 153, 166 (1995) citing *Rakas v. Illinois,* 439 U.S. 128, 131 (1978). "[A]n individual's status as an overnight guest is alone enough to establish a reasonable expectation of privacy." *State v. Corbin*, 2011-Ohio-3491, ¶ 25 (6th Dist.). On the other hand, a defendant lacks standing to object

___

evidence at issue was a handgun. For the record, we note that testimony was offered at trial that a "second search warrant" was executed at "729 Curran," during which a ".40 caliber Smith & Wesson M&P handgun" was located "in the basement in the rafter, hidden * * * in the ceiling rafter floor joists." *See* Feb. 22, 2022 Trial Tr. Vol II at 324-329. Before the weapon was admitted into evidence, defense counsel renewed his objection, which the court "duly noted." *Id.* at 326.

7.

to the warrant or subsequent search of a home where "there [is] no evidence [the defendant] stayed overnight or that he was residing at [the] home at the time of the search." *Dennis* at 426. "When at the time of the search an individual is not an overnight guest, courts look at the totality of the circumstances in making a determination." *Corbin* at ¶ 26 citing *State v. Messenger,* 2010-Ohio-479, ¶ 16 (3d Dist.). In *Corbin,* the defendant was found to have no legitimate expectation of privacy in his girlfriend's residence because, although the defendant "occasionally stayed," there "there was no evidence to support a finding that [he] intended to stay as an overnight guest on the day of the search, or at any point following the search." *Id.* at ¶ 27.

{¶ 15} Bonner does not address the standing issue on appeal, but he repeats his claim, made before the trial court, that he "does not live" nor is he "connected" to the subject residence. Furthermore, the record simply contains no evidence by which the trial court could have concluded that, under the totality of the circumstances, Bonner had a reasonable expectation of privacy in the premises. Accordingly, we find that Bonner did not have a reasonable expectation of privacy in the premises searched, and having failed to establish a personal privacy interest in the premises, Bonner lacks standing to object to the search. Moreover, because we have determined that Bonner lacked standing, we need not consider his argument that the trial court erred in failing to hold a hearing on the issue or in failing to consider the admissibility of the seized evidence. *Corbin* at ¶ 31. For these reasons, Bonner's first and second assignments of errors are not well-taken.

8.

### III. The trial court did not abuse its discretion in excusing Prospective Juror No. 32, pursuant to a "for cause" challenge.

{¶ 16} In his third assignment of error, Bonner claims that the state's challenge to Prospective Juror No. 32, an African–American man, was racially motivated and that the trial court erred in overruling his challenge pursuant to *Batson v. Kentucky,* 476 U.S. 79 (1986). As discussed below, because the juror was removed for cause, and not pursuant to a peremptory challenge, *Batson* does not apply. *State v. Adams*, 2015-Ohio-3954, ¶ 157-158, citing *Batson* at 96–98.

{¶ 17} When Prospective Juror No. 32 was called into the jury box, the following exchange took place,

> THE PROSECUTOR: Hi, sir, how are you doing?
>
> PROSECTIVE JUROR No. 32: Fine. How are you?
>
> THE PROSECUTOR: We're waiting for your jury questionnaire but, again, I think the Judge indicated—anything about the questions that we asked that [would cause] you [to] add [to] the discussions or different opinions?
>
> PROSECTIVE JUROR No. 32: No.

{¶ 18} As the prosecutor questioned Potential Juror No. 32—regarding whether he had ever served on a jury before and about a familial relationship with someone in law enforcement—the trial court interrupted and the following exchange occurred:

> THE COURT: Excuse me. Did you see that?

9.

THE PROSECUTOR:  Oh. Oh, yeah.  You have some –this may conflict with your schedule, this trial?

PROSECTIVE JUROR No. 23:  Yes.

THE PROSECUTOR:  Okay.  All right.

DEFENSE COUNSEL:  Side bar, Judge.

THEREUPON, there was a conference at the bench out of the hearing of the prospective jurors.

DEFENSE COUNSEL:  Judge, I realize, I read the letter too about the thing, however it's the only [African American male] in the room so am I kind of in a *Batson*[?]—

THE COURT:  You have to make that record, I understand.

. . .

DEFENSE COUNSEL:  [Addressing the prosecutor] Were you going to come up just because of the trips or some sort of –

THE PROSECTOR:  Well, I thought it would be for cause like we've been consistent in that regard when we send them letters.

THE COURT:  Yes. He has trips planned.

Tr. Vol. I at 109-111

{¶ 19} Under questioning by the trial court, Potential Juror No. 32 said that he had a previously-scheduled trip to visit his parents in Milwaukee, beginning on Friday, February 24, 2024, which would have been the fourth day of an "anticipated . . . three to four-day" trial.   Potential Juror No. 32 was also asked

10.

about his job as an assistant store manager at Target, where he was overseeing a major store renovation, and he agreed that serving on the jury would "impact [his] work." The state then moved to excuse the juror "for cause," citing "multiple reasons," and the trial court granted the state's request, excusing Prospective Juror No. 32. Banner objected, pursuant to *Batson,* but he did not make a proffer. Tr. at 116-119.

{¶ 20} "[C]hallenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, [whereas] peremptory [challenges] permit[] rejection for a real or imagined partiality that is less easily designated or demonstrable." *Swain v. Alabama,* 380 U.S. 202, 220 (1965*), overruled by Batson v. Kentucky*, 476 U.S. 79 (1986). The Revised Code and the Rules of Criminal Procedure "include catchall provisions allowing prospective jurors to be challenged for cause if they are 'unsuitable for any other cause to serve as a juror.'" *State v. Thompson*, 2014-Ohio-4751, ¶ 83, citing R.C. 2945.25(O) and Crim.R. 24(C)(14). The provision—unsuitable for any other cause to serve as a juror—has been applied to jurors, whose schedules conflict with the trial. *See, e.g., Thompson* at ¶ 83-84*; see also State v. Burns,* 113 Ohio App.3d 598, 601 (8th Dist.1996) (Potential juror excused for cause who had "prearranged business trip and who had already purchased her airline tickets"). A trial court's ruling on a challenge for cause will not be overturned on appeal "unless it is manifestly arbitrary and unsupported by substantial testimony, so as to constitute an abuse of discretion." *State v. Leonard,* 2004-Ohio-6235, ¶ 53 quoting *State v. Williams,* 79 Ohio St.3d 1 (1997). For example, in *State v. Carter,* 2017-Ohio-7501, ¶ 60-64 (7th Dist.), the juror,

11.

an African American, was excused for cause, after advising the court of her college exam schedule and disclosing "other issues" that could affect her objectivity. On appeal, the court found that the trial court made "every effort" to keep the juror from being removed and, considering the entire exchange, there was no indication that the trial court abused its discretion in removing the juror for cause.

{¶ 21} Although a "for cause" challenge has "its own test," Bonner does not address that test herein. Instead, his arguments are limited strictly to his *Batson* challenge. *See, e.g., State v. Lewis*, 2005-Ohio-2699, ¶ 61 (2d Dist.) (Noting appellant's failure to argue whether a juror, dismissed for cause, was properly excused because "he is preoccupied with the *Batson* holding"). But, the record here establishes, unequivocally, that the excusal of Prospective Juror No. 32 was for cause, and not pursuant to a peremptory challenge. Therefore, *Batson* does not apply. *State v. Adams*, 2015-Ohio-3954, ¶ 158, citing *Batson* at 96-98 ("[Defendant] asserts that the state's for-cause challenge to prospective juror No. 301, an African–American woman who remained in the jury pool when the trial court declined to excuse her, was racially motivated. But *Batson* applies only to prospective jurors removed by peremptory challenge."); *see also Carter* at ¶ 64 (Noting that the juror, described as the "last remaining African American venireperson," was excused for cause, "making *Batson* inapplicable").

{¶ 22} Without specifically addressing the merits of the state's for cause challenge of Potential Juror No. 32, Bonner claims that there is "no concrete evidence" that the juror actually "had a vacation conflicting with the trial." First, Bonner failed to examine the juror on this point at trial and has therefore waived the argument on appeal. *State v.*

12.

*Lorraine,* 66 Ohio St.3d 414, 418-419 (1993). Further, the record reflects that it was the trial court that recognized the juror's scheduling conflict, after reviewing Potential Juror 32's jury questionnaire. However, Bonner failed to include the questionnaire on appeal. In the absence of a record that affirmatively demonstrates error, we must presume the regularity and validity of the trial court's proceedings. *Knapp v. Edwards Laboratories,* 61 Ohio St.2d 197 (1980); *See, e.g. State v. Brock,* 2002-Ohio-7292, ¶ 66 (Regularity of proceedings presumed, where the juror's answers during voir dire were "inaudible" and defendant failed to supplement the record under App.R. 9 juror).

{¶ 23} We also reject Bonner's claim that the record contains evidence of the state's "blatant discrimination" in seeking to remove Potential Juror No. 32. During the side-bar conference, the trial court announced that it was "Court policy[]" not to infringe on potential jurors' scheduled vacations. The prosecutor added, "[a]nd on that counterbalance we're discriminating against him because he happens to be Black." Bonner argues that the state's comment constitutes direct evidence of racial animus against him. We disagree. It is clear that the prosecutor was agreeing with the trial court that it *would be* discriminatory *to Potential Juror No. 32,* if the court required him to stay on as a juror and miss his vacation but "treated everybody else different."

{¶ 24} Because the trial court had a valid, independent reason for excusing Prospective Juror No. 32, we find that it was not an abuse its discretion in excusing the juror for cause. *Thompson* at ¶ 83 ("Here, the trial court reasonably exercised its discretion by excusing prospective juror No. 2 [pursuant to Crim.R. 24(C)(14)] because of a scheduling conflict."). Accordingly, we find that there is no evidence that the trial

13.

court abused its discretion in removing the juror for cause, and Bonner's third assignment of error is not well-taken.

## IV. The trial court's failure to declare, sua sponte, a mistrial was not plain error.

{¶ 25} In his fourth assignment of error, Bonner claims that the trial court should have declared a mistrial after he brought the issue of a sleeping juror to the court's attention. Bonner concedes that the issue must be reviewed for plain error, due to his failure to request a mistrial at trial or otherwise complain about the trial court's handling of the matter. *State v. Sanders,* 92 Ohio St.3d 245 (2001); *State v. McKnight,* 2005-Ohio-6046, ¶ 26. An alleged error constitutes plain error only if the error is "obvious" and "but for the error, the outcome of the trial clearly would have been otherwise." (Citations omitted.) *State v. Yarbrough,* 2002-Ohio-2126, ¶ 108; Crim.R. 52(B). Notice of plain error is "to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long,* 53 Ohio St.2d 91 (1987), paragraph thee of the syllabus.

{¶ 26} Sleeping during trial is a form of juror misconduct. *State v. Bond*, 2023-Ohio-1226, ¶ 30 (2d Dist.), *appeal not allowed,* 2023-Ohio-2664, citing *United States v. Sherrill*, 388 F.3d 535 (6th Cir. 2004). A juror who sleeps through much of the trial testimony cannot be expected to perform his or her duties. *Id.,* citing *United States v. Warner*, 690 F.2d 545 (6th Cir. 1982). However, "if a sleeping juror has not missed 'large or critical portions' of the proceedings, no prejudice results from that juror's remaining on the jury." *Id.,* quoting *State v. Breneman*, 2020-Ohio-4151, ¶ 57 (2d Dist.). A trial

14.

court has broad discretion in handling a situation in which a juror has fallen asleep during testimony. *Sanders* at 253.

{¶ 27} In this case, the record indicates that, while the defense was presenting its closing argument, defense counsel alerted the court, outside the earshot of the jury, that "[Juror] Number 1 is asleep." The court agreed that it could "see that" and asked if they should "wake him up." Defense counsel questioned whether a "two-minute break" was appropriate. The court then asked each party how much longer their respective closing arguments would take, and defense counsel suggested that the jurors be allowed to stretch: ("Just have them get up and stretch or something?" and "See if they want to stretch.") In response to those requests, the trial court asked "[a]nybody want to stand up and stretch or anything. Okay." The record does not reflect whether any jurors stretched or not. However, after confirming with the court that the parties were "continuing," defense counsel resumed his closing argument.

{¶ 28} On appeal, Bonner claims that the result of the trial would have been different "had the juror not been sleeping." Apart from that conclusory statement, Bonner has not explained how the result of this case would have been different if, for example, the juror had been excused or a mistrial declared, nor has Bonner explained why this is an exceptional case where plain error must be found to prevent a manifest miscarriage of justice. *State v. Dudley,* 2017-Ohio-7044, ¶ 16 (9th Dist.) (Conclusory statement is insufficient for purposes of establishing plain error on appeal under App.R. 16(A)(7)).

{¶ 29} Furthermore, we note that the juror who allegedly slept did so for some unknown quantity of time and during defense counsel's closing argument. Where there is

15.

no evidence that a sleeping juror has missed "large or critical portions of the trial," plain error does not occur in allowing the juror to remain on the panel. *State v. Suarez*, 2014-Ohio-1350, ¶ 30 (11th Dist.), quoting *Sanders* at 253 (Finding no plain error where any potential portion of the trial missed occurred during closing arguments, not during presentation of any evidence or jury instructions necessary to properly reach a verdict in this case). In light of the limited evidence of the sleeping juror and the lack of any evidence of prejudice caused by it, we find that Bonner failed to establish that plain error occurred in this case. Therefore, we find that Bonner's fourth assignment of error is without merit.

### V. Bonner failed to show plain error as to the state's bill of particulars.

{¶ 30} In his fifth assignment of error, Bonner claims that the state failed to provide a "bill of particulars that complied with *State v. Haynes,* [2022-Ohio-4473], the Ohio Revised Code and the Criminal Rules."

{¶ 31} Crim. R. 7(E) provides that "[w]hen the defendant makes a written request . . . the prosecuting attorney *shall* furnish the defendant with a bill of particulars setting up specifically the nature of the offense charge[d] and the conduct of the defendant alleged to constitute the offense." (Emphasis added.) *Id.*; *accord* R.C. 2941.07.

{¶ 32} "Bills of particulars must be provided on request." *Id.* at ¶ 24. In *Haynes,* the Ohio Supreme Court emphasized that, "[t]here are no exceptions to the requirement; the state must provide a bill of particulars on a defendant's request, even when the prosecutor believes that the defendant is able to glean the nature and cause of the accusation against him from the discovery the state provided or from some other source."

16.

*Id.* at ¶ 26. ("[A]ny decision stating that the provision of discovery excuses a failure to provide a bill of particulars is just plainly erroneous . . . [and] no longer good law.").

{¶ 33} Bonner requested a bill of particulars on February 27, 2020, as part of a general demand for discovery. And, unlike *Haynes,* the state in this case provided a Bill of Particulars on March 2, 2020, which it supplemented on March 4, 2020, and again on July 11, 2020. Bonner did not object to any of those filings or otherwise complain that they were inadequate. Because Bonner did not raise the issue in the lower court, we review for plain error. *State v. Petrey,* 2024-Ohio-2118, ¶ 16 (4th Dist.) (Defendant relegated to plain error review where he "never brought the State's alleged failure to provide an adequate bill of particulars to the trial court's attention."); *see also State v. Shirley*, 2013-Ohio-1948, ¶ 22 (12th Dist.) ("Because a request for a bill of particulars, like a demand for discovery, is filed with the court but made directly to the prosecutor, the defendant is required to bring the state's failure to respond to the trial court's attention at a time when the error can be remedied."). To qualify for plain error, Bonner must establish that the error affected the trial's outcome." *State v. Choudri,* 2023-Ohio-4476, ¶ 31 (3d Dist.)

{¶ 34} On appeal, Bonner complains that the Bills of Particular filed by the state were "identical" and that they "simply restate the language of the indictment," which he argues is *ipso facto* "[in]sufficient," as a matter of law. To the contrary, "[n]ot every case requires a bill of particulars [because] [s]ometimes an indictment tells a defendant all the defendant needs to know to understand exactly what is alleged." *Haynes* at ¶ 26.

17.

{¶ 35} Here, Bonner provides no details about the Bills of Particular, much less articulate *how* they were inadequate or defective.  *See, e.g., Choudri* at ¶ 38 (Finding that defendant was not prejudiced by an "alleged lack of clarity and specificity" in the bill of particulars where defendant "fail[ed] to show how knowledge of certain facts omitted from the bill of particulars would have changed [her] defense.'").

{¶ 36} Upon review, we note that the Bills of Particular, in this case, identify the perpetrator, the victim, the date, and the elements, as to each offense.  *Accord, State v. Barton,* 2024-Ohio-1417, ¶ 42 (Bill of particulars found to be adequate where it identified the perpetrator, victim, date, and elements of the offense).  In the absence of any evidence showing that the bills were inadequate or that he was prejudiced by them, Bonner cannot show plain error.   Accordingly, his fifth assignment of error is not well-taken.

### VI. Bonner fails to show ineffective assistance of trial counsel.

{¶ 37} In his sixth assignment of error, Bonner alleges that his trial counsel rendered ineffective assistance of counsel for failing to seek dismissal of the charges against him (on speedy trial grounds) *and* for failing to seek a mistrial (for the sleeping juror).  However, Bonner's brief includes no argument or mention of the sleeping juror claim and therefore, we do not address it herein.  *See* App.R. 12(A)(2) ("The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).")

{¶ 38} Also, subsequent to the parties' briefing, Bonner sought leave to supplement his brief, acknowledging that he had failed to argue trial counsel's failure to

raise his *constitutional* right to a speedy trial. Indeed, Bonner's sixth assignment of error mentions only his *statutory* right to a speedy trial. Bonner's request for leave was granted, and the issue was designated as Bonner's seventh assignment of error and fully briefed, by both parties. We address Bonner's sixth and seventh assignments of error together.

{¶ 39} Bonner argues that "[t]he failure to raise the speedy trial defense is plan error" [sic]. Appellant's brief at 22-23, quoting *State v. Hall,* 2022-Ohio-3501, ¶ 12 (6th Dist.) (Explaining that because the appellant failed to file a motion to dismiss on speedy trial grounds, "our review is limited to plain error."). Bonner confuses a claim premised upon a speedy trial violation (which Bonner has not asserted) with a claim of ineffective assistance of counsel based upon counsel's failure to raise a speedy trial violation (which he has). If there was any doubt as to Bonner's confusion, it was resolved in his supplemental brief, wherein he addresses the merits of a constitutional speedy trial violation. ("I consider the statutory speedy trial violation argument fully developed, despite the misnomered assignment of error. Having not developed the argument of violation of constitutional speedy trial violations, I requested leave.") We review claims of ineffective assistance of counsel, not for plain error, but rather under the well-established standard set forth in *Strickland v. Washington,* 466 U.S. 668, 694 (1984), which Bonner makes no mention of in his brief or its supplement.

{¶ 40} In any event, to establish ineffective assistance, Bonner must show (1) deficient performance by counsel, that is, performance falling below an objective standard of reasonable representation, and (2) prejudice—a reasonable probability that,

19.

but for counsel's errors, the result would have been different. *Strickland* at 694; *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus.

{¶ 41} Ohio recognizes both a constitutional and a statutory right to a speedy trial. *State v. King,* 70 Ohio St.3d 158, syllabus (1994). Section 10, Article I of the Ohio Constitution and the Sixth Amendment to the United States Constitution state that a criminal defendant has the right to a speedy trial. *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967); *State v. Selvage*, 80 Ohio St.3d 465, 466 (1997). The statutory right to a speedy trial is embodied in R.C. 2945.71 to 2945.73. R.C. 2945.71(C)(2) provides that an individual charged with a felony, such as Bonner, "[s]hall be brought to trial within two hundred seventy days [270] after the person's arrest." Each day the defendant spends in jail "on the pending charge" counts as three days. *Id.* at (E). This is commonly referred to as the triple count rule. The running of the speedy-trial clock may be tolled, as set forth in R.C. 2945.72.

{¶ 42} Moreover, the constitutional and statutory right to a speedy trial may be waived so long as the waiver is knowingly and voluntarily made. *King* at 160, citing *Barker v. Wingo*, 407 U.S. 514, 529 (1972) ("[A]n accused's express written waiver of his statutory right to a speedy trial, made knowingly and voluntarily, also constitutes a waiver of his speedy trial rights guaranteed by the United States and Ohio Constitutions.").

{¶ 43} According to the record, Bonner was arrested on February 26, 2020, and he was tried nearly three years later, beginning on February 21, 2023. The state points to evidence of many tolling events that occurred in this case and in particular to Bonner's

20.

written waiver of his right to a speedy trial. The state argues that Bonner's waiver precludes any argument that his speedy trial rights were violated, including that trial counsel was ineffective for failing to seek dismissal on that basis.

{¶ 44} Indeed, the record includes a March 10, 2021 motion for continuance filed by Bonner, which includes a "waiver of speedy trial" provision. It states,

> I, Alonzo Bonner, the Defendant in this case, have been advised that I have a right under the Constitution and laws of the United States and the State of Ohio to a speedy trial/or a reasonable time period for a hearing. I hereby in open Court waive my right and consent to this case being continued √ indefinitely __ until next Court date.

The motion also includes an "attestation of counsel" provision wherein counsel indicated, with his signature, that he had explained to Bonner his right to a speedy trial and that Bonner agreed to the waiver knowingly, intelligently and voluntarily. The record discloses no revocation of the waiver or demand for trial.

{¶ 45} Bonner did not acknowledge the existence of the waiver in his appellate brief. But, in response to the state's argument, Bonner denied—in his supplemental brief—that he had placed "a check mark . . . before the word indefinitely." He argues that the mark "is simply part of his signature." At a minimum, Bonner urges this court to construe "[a]ny ambiguity" in his favor.

{¶ 46} Having reviewed the form, we do not find it to be ambiguous. That is, the form clearly and unambiguously includes a "√" indicating that the waiver is effective "indefinitely." And, even if we agreed with Bonner—that the "indefinitely" line was left blank—we would *still* find that the waiver is open-ended. This is because "[a] waiver that expressly waives the accused's right to a speedy trial under the statute without

21.

mentioning a specific time period is unlimited in duration, and the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection and demand for trial." *State v. O'Brien*, 34 Ohio St.3d 7 (1987), paragraph two of the syllabus; *see also State v. Jackson,* 2015-Ohio-2473, ¶ 36 (9th Dist.) (A waiver "that does not list any time period [is] treat[ed] as unlimited in duration."). In other words, whether Bonner affirmatively indicated that the waiver remained in effect "indefinitely" or whether he left that space blank, the result is the same: the waiver remained in effect unless and until he made a written demand for trial. The record contains no such demand in this case. It follows that trial counsel was not ineffective for failing to file a motion to dismiss the case on speedy-trial grounds. *State v. Birr,* 2011-Ohio-796, ¶ 23 (6th Dist.) (Where the record contains "several written waivers" of defendant's right to a speedy trial, "trial counsel was not ineffective for failing to file a motion to dismiss the case for speedy-trial reasons."); *see also State v. Anderson,* 2010-Ohio-3683, ¶ 8 (8th Dist.) ("We cannot find that appellate counsel was required to pursue an assignment of error that dealt with the denial of the right to a speedy trial [because it] would have been meritless."). Accordingly, Bonner has failed to establish any defective performance by trial counsel, which is fatal to his ineffective assistance claims. Therefore, we find Bonner's sixth and seventh assignments of error not well-taken.

22.

## VII. Conclusion

**{¶ 47}** As set forth above, we find Bonner's seven assignments not well-taken, and

we affirm the March 17, 2023 judgment of the Erie County Court of Common Pleas.

Pursuant to App.R. 24, Bonner is ordered to pay the costs of this appeal.  It is so ordered.

Judgment affirmed.


A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.          _____
                                         JUDGE

Christine E. Mayle, J.

                            _____
Gene A. Zmuda, J.                          JUDGE
CONCUR.

                            _____
                                         JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.